IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:09cr70 |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN F. ENGLE | ) | |

CONSOLIDATED RESPONSE OF THE UNITED STATES
TO THE DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney for the Eastern District of Virginia, and Robert J. Krask, Assistant United States Attorney, respectfully submits its opposition and response to defendant Shawn F. Engle's pretrial motions. The Court should deny each of the motions for the reasons set forth below.


1. RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT FOR LACK OF VENUE .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2. RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS. . . . . . . . . . . . . . . . . . . . . . . 8


BACKGROUND

During 2008, defendant Shawn Engle sought to enter into sexual relationships with two minor girls who lived outside the Commonwealth of Virginia. At that time, Engle was 30-31 years of the age, while the two minors were approximately 16-17 and 13 years of age. After meeting both girls on the Internet, Engle mostly communicated with them by telephone text messaging, until such time as he sought physical contact with them.

During April 2008, Engle traveled from Virginia to Pennsylvania on two separate occasions to meet a then 17 year old minor. Although others warned Engle about pursuing

underage girls, including the Pennsylvania minor, Engle responded by stating, among other things, that he hoped not to get caught. On his first visit to Pennsylvania on April 16, 2008, Engle picked up the minor from her high school, took her to a motel, and provided her with alcohol. Nine days later, Engle returned to Pennsylvania on the weekend of April 25-27, 2008. After picking up the minor and providing her with alcohol, Engle used a video camera that he brought along for the trip to film the minor engaging in sexual acts with him. After this second meeting, the Pennsylvania minor thought better of any future meetings with Engle, in part, because he sent naked pictures of himself to her telephone and offered to help her run away to a place where no one would find her.

In response, Engle apparently turned his attentions to a 13 year old minor from South Carolina. In the third week of August 2008, for example, Engle sent telephone text messages to this minor professing his love for her and suggesting that she should come to Virginia Beach. Following a family crisis, this minor reported that she contacted Engle in late August 2008[1] and asked him to come pick her up in South Carolina because she could not remain at the family home. The minor reported, and telephone records and other witnesses confirm, that Engle then brought her to Virginia Beach to a house at 4817 Westgrove Road, where the itinerant Engle occasionally stayed with acquaintances. Suspecting that this minor may have gone to Virginia Beach, a South Carolina investigator contacted Engle, who falsely stated that he had no idea where the minor was, agreed to contact South Carolina authorities if he heard from her and, when asked for an address at which local law police might come to interview him, provided a false

[1]In her signed statement, the minor reported that Engle picked her up the Saturday before "Memorial Day" of 2008, when, in fact, she meant "Labor Day" as is made clear by the rest of her statement given on September 18, 2008.

Virginia Beach address as his own. In fact, the minor reported that she remained with Engle at the 4817 Westgrove Road house for a week or two and that she and Engle engaged in sexual intercourse on two or three occasions while staying there.[2] The minor advised that Engle then took her to his mother's home in Gates County, North Carolina, where police found her on or about September 16, 2008.

After the minor gave a written statement to South Carolina police about her travels and activities with Engle in Virginia Beach and elsewhere, South Carolina authorities charged Engle with kidnaping and obtained a warrant for his arrest and provided information to the Virginia Beach Police Department (VBPD), which posted a lookout for Engle. As further described below, on October 24, 2008, the VBPD found and arrested Engle on the South Carolina warrant and later charged him in Virginia Beach with having carnal knowledge of a child under the age of 16 and with abduction of a minor.

Following his arrest, Engle sought to obstruct the investigations into his misconduct. Among other things, Engle: a) contacted the 13 year old minor and her family to attempt to get the minor to recant her signed statement about her travels and activities with Engle;[3] b) wrote and telephoned witnesses directing them to destroy evidence and provided them with stories to tell, if asked about his contacts with the minors; c) made taped statements threatening to attack the FBI case agent when she picked him up on any federal charges and about his intent to go after his

[2]The minor's presence at the house is corroborated, among other ways, by the fact that a blood stained sheet obtained from the pullout sofa where she and Engle slept contained DNA matching the minor's DNA.

[3]On January 27, 2009, Engle's mother provided a copy of the minor's signed recantation to the FBI case agent. On April 21, 2009, the minor reported that she lied in this manner at Engle's request and reiterated her original statement.

Virginia Beach prosecutor and wondered about "how much [his] kidneys will go for on the black market;" and d) encouraged the 13 year old minor to run away before his Virginia Beach trial, so that the case could not go forward.[4] At the same time, Engle wrote letters to the 13 year old South Carolina minor describing his obsession with her, promising to return to her as soon as the Virginia Beach charges were dismissed, and describing sexual activities he hoped to perform with her.

These facts form the backdrop for the charges set forth in the fourteen count superseding indictment. Count one charges Engle with sexually exploiting the Pennsylvania minor by inducing her to engage in sexual activity filmed by Engle, which film he transported to the Eastern District of Virginia. Count two charges Engle with possession of child pornography based upon that film. Counts three through five and nine through fourteen charge Engle with witness tampering. And, counts six through eight charge Engle with attempting to entice the 13 year old minor to engage in sexual activity with Engle following his return to South Carolina upon the dismissal of Virginia Beach charges.

## 1. SHAWN ENGLE'S TRANSPORTATION OF HIS SEXUAL VIDEOTAPE TO VIRGINIA ESTABLISHES VENUE HERE FOR THE CHARGE IN COUNT ONE

Count one of the indictment charges Shawn Engle with sexual exploitation of the Pennsylvania minor and stems from Engle's production of the above-described videotape, which he transported from the Pennsylvania to Virginia. Engle seeks to dismiss this count asserting that

[4]After the minor did, in fact, run away from the group facility where she was staying shortly before Engle's July 7, 2009 trial, Virginia Beach authorities *nolle prossed* the charges.

none of the conduct constituting the charged offense, 18 U.S.C. § 2251(a), occurred in this district. Significantly, however, the only case cited by Engle specifically addressing the venue for a section 2251(a) prosecution, *United States v. Reigle*, 228 Fed. Appx. 353, 2007 WL 1560015 (4th Cir. 2007), demonstrates that venue lies in this district. Because the indictment alleges that Engle transported the sex videotape from Pennsylvania to Virginia as required by the statute, venue is proper and the defendant's motion should be denied for the reasons noted below.

The Constitution guarantees an accused the right to be tried where the crime was allegedly committed, and this is reflected in the Federal Rules of Criminal Procedure. U.S. Const., Art. III, § 2; U.S. Const., Amend. VI; Fed. R. Crim. P. 18. "When multiple counts are alleged in an indictment, venue must be proper on each count." *United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001). The United States bears the burden of proving proper venue by a preponderance of the evidence. *Id.* Circumstantial evidence alone is sufficient to meet this burden. *United States v. Griley*, 814 F.2d 967, 973 (4th Cir. 1987).

The offense of sexual exploitation of a minor in Title 18, United States Code, Section 2251(a), requires proof not only of using, persuading, inducing, and enticing a minor under the age of 18 to engage in sexually explicit conduct to make a videotape of such conduct, but also demonstrating that the offense affected or involved interstate commerce. The statute contemplates that this element may be satisfied by proof that – (a) the defendant knew or had reason to know the visual depiction (videotape) would be transported using any means or facility of interstate commerce, (b) the visual depiction was produced using materials that have traveled in interstate or foreign commerce; or (c) the visual depiction was actually transported using any means or facility of interstate commerce. 18 U.S.C. § 2251(a).

Under Title 18, United States Code, Section 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued or completed." 18 U.S.C. § 3237(a). Section 3237(a) also provides that "continuing offense[s]," like section 2251(a), which "involv[e] the use of the mails or transportation in interstate . . . commerce . . . may be . . . prosecuted in any district, from, through, or into which such commerce . . . moves."

The application of these rules to the facts of this case shows that Engle's motion to dismiss should be denied. A necessary proof element for the charged offense of sexual exploitation of a minor is the transportation of the sexual videotape (and/or Engle's knowledge that such would later occur) in interstate commerce into the Eastern District of Virginia, as alleged in count one. *See United States v. Husband*, 119 Fed. Appx. 475, 477, 481, 2005 WL 44942 (4th Cir.)(rejecting statute of limitation challenge to section 2251(a) charge prosecuted in Norfolk/Newport News where taping occurred in New York because "the final element of his crime was not complete until 2001, when the tape was transported across state lines," when the defendant moved to Virginia), *vacated on other grounds*, 546 U.S. 802 (2005)(for resentencing due to *Booker)*. When Engle returned to Virginia with the videotape (later recovered by Virginia Beach police on October 24, 2008), Engle's offense was complete. *See United States v. Sirois*, 87 F.3d 34, 38 (2d Cir. 1996)("a violation of § 2251(a) that is based on *actual* transportation of child pornography across state lines *cannot* be complete until the pornography is so transported"). Because defendant Engle's venue argument ignores this element of proof in attempting to identify the criminal conduct at issue, Engle's implied claim that venue lies only in

Pennsylvania is mistaken. *See United States v. Schaffner*, 258 F.3d 675, 683 (7th Cir. 2001)("The criminal activity is inducing a minor to participate in the taking of a photograph *and* the photograph's movement in interstate commerce"). Indeed, such a claim, would stand the rationale for the venue rule upon its head, by seeking Engle's trial in a more remote district with which the defendant had less contact. *See United States v. Cores*, 356 U.S. 405, 407 (1958)("The provision for trial in the vicinity of a crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.").

Moreover, in *United States v. Reigle*, the appellant raised and the Fourth Circuit rejected the venue claim that Engle now asserts. The *Reigle* prosecution was brought in Maryland and included two counts (4 and 5) charging sexual exploitation of a minor based upon videotapes and photographs made by the appellant at his Pennsylvania home and later transported into Maryland. 228 Fed. Appx. 1-2. On appeal, the appellant asserted that the District of Maryland was an improper venue for the sexual exploitation counts (4 and 5). *Id.* at 355-56. While acknowledging that the defendant "created the visual depictions in . . . Pennsylvania," the Fourth Circuit held that venue was proper with respect to both counts because: (a) the "depictions were discovered on a computer at a home in . . . Maryland [and] were downloaded from the [I]nternet into the computer;" and (b) an FBI agent also downloaded the pornography into Maryland. *Id.* at 356.

*Reigle* is on all fours with defendant Engle's case. Although Engle argues that the method of interstate transport of the visual depiction in *Reigle* (via the Internet) warrants treating his case differently, this is a distinction without a difference and without statutory support. Nowhere does section 2251(a) specify differing venue rules based upon whether a defendant

physically transports a videotape from one state to another or places an item upon the Internet for download by persons in other states. Instead, section 2251(a) simply requires proof that the offense involved transport in interstate commerce, which occurred in this case from Pennsylvania to the Eastern District of Virginia. Accordingly, for all the reasons noted above, defendant Engle's motion to dismiss count one should be denied.

## 2. THE EVIDENCE OBTAINED FROM THE SEARCH OF SHAWN ENGLE'S 2003 ISUZU RODEO WAS LAWFULLY SEIZED

Defendant Engle also moves to suppress certain evidence seized by the VBPD from his 2003 Isuzu Rodeo following his October 24, 2008 arrest. No grounds exists to suppress the seized evidence because probable cause existed to search and it was reasonable to believe that the Rodeo contained evidence pertaining to the offense of arrest, because the VBPD properly seized and impounded the vehicle and inventoried its contents, and because the VBPD acted in good faith.

### a. Factual Background

The events leading to Shawn Engle's arrest on October 24, 2008 by the VBPD had their origin on August 30, 2008, when Engle traveled to South Carolina to pick up the 13 year old minor and brought her to Virginia Beach. Soon thereafter, the girl's father reported her disappearance to the Greenville County Sheriff's Office (GCSO). After obtaining and examining the missing minor's cellphone, GCSO Investigator Perry discovered that it contained numerous text messages from Shawn Engle to the minor, which among other things, indicated that Engle loved her and wanted her to come to stay with him. As a result, Engle quickly became a suspect in the minor's disappearance and GCSO Investigator Perry telephoned him. After Investigator

Perry talked to Engle on September 3, 2008 and Engle falsely denied knowing of the minor's whereabouts as noted above, Investigator Perry contacted the VBPD and Detective Alan Everett to request assistance in locating Engle and the minor.[5] In addition to disseminating a "be on the lookout" notice for Engle and his vehicle, Detective Everett went to the false address given by Engle as his Virginia Beach residence and, after canvassing the apartment complex, did not find them there.

On or about September 16, 2008, police recovered the minor at Engle's mother's home in Gates County, North Carolina. Two days later, the minor gave a written statement to the GCSO indicating, among other things, that Shawn Engle picked her up and transported her to Virginia Beach to "Russell's house" and then later to Engle's mother's house in North Carolina.[6] Based upon this statement and the recovery of the minor, South Carolina charged Engle with kidnaping and obtained a warrant for his arrest. Further, GCSO Investigator Perry passed on the details about the minor's statement to VBPD Detective Everett because of Engle's possible presence in Virginia Beach. Detective Everett created a wanted poster for Engle.

On the afternoon of October 24, 2008, a VBPD community services officer reported seeing Engle's vehicle parked on the street in front of 4817 Westgrove Road, Virginia Beach, VA. In response to this information, VBPD Officers Joseph Shank and Paul Cahill were dispatched to the scene at approximately 3:43 p.m. Each officer drove marked police vehicles

---

[5]The minor reported that she was present when Engle falsely spoke to Investigator Perry while driving in the car and that Engle "was afraid that his phone was being tracked."

[6]The minor identified "Russell" as a friend of Engle's and indicated that Russell and several others shared the Virginia Beach house that she and Engle visited. She did not, however, provide an address for the house.

and they set up a surveillance on the vehicle at locations roughly a block to the east and west, respectively, of the parked car. At approximately 4:00 p.m., Shawn Engle began driving the car away from the scene. As he did so, Officer Shank pulled behind and followed Engle's 2003 Isuzu Rodeo as it made a series of right turns without turn signals going around a nearby street block, as if the driver had noticed the police vehicle and was making his way back to 4817 Westgrove Road. After Engle turned left back onto Westgrove Road, Officer Shank activated his lights to initiate a traffic stop for both the pending South Carolina warrant and Engle's failure to signal his turns. Engle then drove past several houses and hastily pulled, at less than a 90 degree angle, into the driveway at 4817 Westgrove Road. Officer Shank then pulled up onto the lawn (there was no curb) alongside the back driver's side of Engle's vehicle. Meanwhile, Officer Cahill, who monitored Officer Shank's pursuit, then pulled behind Engle's vehicle.

Both officers immediately approached Engle, who exited the vehicle and was taken into custody by Officer Cahill at approximately 4:05 p.m. Engle inquired about the reason for the arrest, provided a North Carolina driver's license with a North Carolina address, and reported that he was staying at 4817 Westgrove Road, but did not live there. At approximately 4:13 p.m., Officer Cahill left the scene to transport Engle to the VBPD detective bureau at the request of Detective Everett, who had been notified of the vehicle sighting and of Engle's arrest.

When no one else was present at 4817 Westgrove Road and Engle's identification showed that he did not live there, a superior directed Officer Shank to impound the 2003 Isuzu Rodeo and a message was left for a city wrecker at approximately 4:25 p.m. Officer Shank then began to inventory the vehicle's contents and was provided with a "tow ID number" at

approximately 4:33 p.m. for the VBPD impound/seizure form that he was filling out. Officer Shank also received direction to remain with the vehicle and await Detective Everett's arrival at the scene. Because Detective Everett first proceeded to interview defendant Engle, however, his arrival was delayed.

After being advised of his rights by Detective Everett, Engle made several statements in response to questioning. Engle admitted knowing about a "warrant for kidnaping" but claimed that it was a false warrant and that he had been in contact with North Carolina authorities about it. Engle further advised that he lived in Virginia Beach, but went back and forth from his mother's house in North Carolina. He admitted that he used to have a limousine business, but said that it dried up because of the economy and that he was not doing anything at that time and was living off savings. He said that he was friends with a Russian named "Russell" who lived at the Westgrove Road address and that he "crash[ed] there" once in awhile. When asked about whether he met the 13 year old South Carolina minor on MySpace, Engle responded saying "yes" and then said "well, I met her mom." Engle stated that he did not want to talk about how he met her. When further asked if he had talked to the minor on MySpace, Engle stated "OK." When asked again if this was true, Engle responded that he had spoken to her mom a couple of times and that he knew them from the past. The conversation then concluded.

After interviewing Engle, Detective Everett responded to the scene and arrived sometime after dark with two FBI agents, who were called in to assist in the light of the underlying crime's potential interstate nexus. After arriving at the scene, Detective Everett, with the assistance of the two FBI agents, reviewed the inventoried contents of the vehicle for potential evidence pertaining to the case. As this occurred, Detective Everett selected certain items, including a

cellphone, assorted telephone records, and a digital video camera and an SD memory card, for logging into VBPD evidence. As he did so, Detective Everett directed Officer Shank to scratch these selected items off the impound/seizure form. These items, as well as others retrieved by consent from the residence after a resident returned, were logged into VBPD evidence. Engle's vehicle was then towed from the scene.

Two days later, on October 26, 2008, Detective Everett sought and obtained a Virginia Beach warrant to search the electronic items and storage media obtained from Engle's car and from the premises of 4817 Westgrove Road, including a Motorola cell phone, digital video camera, and SD media card. A search of the cell phone revealed communications between Engle and the 13 year old South Carolina minor and her mother, among others, and photographs of the minor. The telephone records document, among other things, Engle's possession of telephone bills for the cell phone used to send text messages to the 13 year old minor before her trip to Virginia Beach. A search of the SD card revealed that it contained the contraband sexual videotape noted above.

At the time, investigators were uncertain whether the brunette teenage female shown in the videotape was the South Carolina minor (also a brunette teenager) because of the quality of the videotape and the distance from which it was shot. Contrary to the defense claim, the FBI case agent did not later state that the "female . . . did **not** resemble any alleged victim of any offense under investigation." Def. Motion to Suppress at 3. In fact, only after later identifying the Pennsylvania minor in January 2009, the FBI case agent reported that the video showed Engle engaging in sexual acts with a "white, teenage female," who "appeared not to be the 13 year old minor from South Carolina . . . ." Complaint Affidavit (2:09mj39) at ¶15, 1/28/09.

**b. Discussion**

Subject to a few well established exceptions, warrantless searches are *per se* unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). In the case of motor vehicles, however, several exceptions exist which apply to this case. First, the Fourth Amendment does not require a warrant to search a vehicle, when probable cause exists to believe that it contains contraband or evidence of criminal activity. *See United States v. Ross*, 456 U.S. 798, 804-09, 825 (1982). Under the "automobile exception," "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)(*per curiam*)(quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)); *United States v. White*, 549 F.3d 946, 949 (4th Cir. 2008). A car is "readily mobile" if it is "operational." *United States v. Brookins*, 345 F.3d 231, 238 (4th Cir. 2003).

Second, as recently discussed by the Supreme Court in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), the passenger compartment of a vehicle may be searched, without a warrant, incident to the custodial arrest of a recent occupant. This decision held that such a search is permissible if either (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest. *Gant*, 129 S. Ct. at 1723. "Circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*. at 1719.

In *Gant*, the Court introduced a new standard specifying an additional ground for a search even where the totality of the circumstances would not provide probable cause under the

"automobile exception." It differs from a search based upon probable cause and, in some respects, is necessarily broader to avoid being subsumed by *Ross* and made irrelevant. This new "reason to believe" search described in *Gant's* turns on whether the offense of arrest is one for which there is reason to think that the vehicle would contain evidence. A drug offense, for example, will provide reason to believe that more drugs may be in the car. A speeding or seatbelt offense will not. All that an officer needs to determine is whether the type of offense is one for which evidence may be found in the car that would support the charge.

A third exception to the Fourth Amendment's warrant requirement provides that a vehicle may be subjected to an inventory search without probable cause when police lawfully obtain custody of the vehicle and conduct the search pursuant to established policy designed to protect the owner's property while in police custody, to protect the police against potential false claims for lost or stolen property, and to protect the police from danger. *See, e.g., Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987); *United States v. Patterson*, 150 F.3d 382, 386-87 (4th Cir. 1998)(approving inventory search following warrantless seizure of vehicle used to commit crime).

Each of these exceptions applies to establish that the VBPD lawfully searched defendant Engle's 2003 Isuzu Rodeo on October 24, 2008. In the first instance, Engle's car was properly subjected to an inventory search pursuant to established VBPD policy. Engle had been arrested and removed from the scene. The car had no other occupants who were available to take custody of the vehicle. Engle's identification showed a North Carolina address. And, none of the residents at 4817 Westgrove Road were home when the decision was made to inventory the vehicle. Accordingly, the officers on the scene correctly decided to impound and inventory the

vehicle consonant with established VBPD policy (and the Virginia Code). *See VA CODE ANN.* § 19.2-80.1 (when a driver is arrested and no other person is present at the scene to be designated to drive the vehicle away, an officer "may cause the vehicle to be taken to the nearest appropriate place for safekeeping").

In addition to the fact that a valid inventory search occurred, Engle's vehicle was also properly searched pursuant to both the "automobile exception" discussed in *Ross* and the less onerous "reason to believe" standard discussed in *Gant.* Due to Detective Everett's involvement in the investigation dating back to 13 year old minor's disappearance in late August 2008, his continuing interaction with South Carolina investigators, his knowledge of the minor's statement to those authorities, and his interview of Shawn Engle, Detective Everett possessed probable cause to search the vehicle, which was an instrumentality of the crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983)(probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place," "given all the circumstances").

Detective Everett knew, among other things: 1) that Engle communicated with the minor on MySpace and via text messages and thus used a computer and cell phone to communicate with her; 2) that the minor reported that she traveled from South Carolina to Virginia Beach with Engle and that they engaged in sexual activity at a Virginia Beach residence; 3) that the minor reported that Engle had taken her to his mother's house in North Carolina, and she was, in fact, recovered there in mid-September 2008; 4) that Engle had provided South Carolina investigators with a false Virginia Beach address (where Detective Everett had been unable to locate Engle) and had not disclosed that the minor had been with him; 5) that, despite Detective Everett's best efforts, VBPD could not locate Engle until October 24, 2008; 6) that Engle admitted to Detective

Everett that he had known that South Carolina had a warrant for his arrest and that he knew the South Carolina minor and her mother; and 7) that South Carolina authorities had charged Engle with an offense, the underlying facts of which required Engle to have transported the minor a substantial distance across state lines. These facts, among others, gave Detective Everett probable cause to search the vehicle for, among other things, electronic and storage devices used to communicate with the minor and/or to take photographs of her and Engle, clothing and personal effects of the minor, and receipts/records pertaining to Engle's whereabouts during the time period in question.[7] That this is so is further demonstrated by the fact that on October 26, 2008 a local Virginia Beach magistrate found that such facts established probable cause for a warrant to search the electronic devices recovered from the vehicle.

Alternatively, even if this Court disagreed with that conclusion, the facts of this case also satisfy the lower standard established by the Supreme Court in *Gant*. The nature of the offense of arrest alone – Engle's kidnapping and transport of the South Carolina minor – made it "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *See Gant*, 129 S. Ct. at 1719 (distinguishing the case where an occupant is arrested for a traffic violation from those cases where "*the offense of arrest will supply a basis* for searching the passenger compartment")(emphasis added). Although *Gant* appears to require nothing more,

---

[7]The minor's recovery five weeks earlier does not change this calculus. It is common knowledge that electronic devices such as cellphones and digital video cameras, for example, store images and contain evidence of communications between people for an extended period of time and that people who travel often keep receipts and records pertaining to their trips in their vehicles. Nor does the after the fact discovery of a contraband sexual videotape involving another female who resembled, but ultimately turned out not to have been the 13 year old minor, affect the calculus of whether there was a fair probability or a reason to believe that a camera would contain evidence about the offense of arrest.

when the offense of arrest is coupled with the facts noted above and the fact that the vehicle was a likely instrumentality of the offense, ample grounds exist for the Court to conclude that Detective Everett's search satisfied the requirements of *Gant*.

Finally, two other grounds support the search conducted. If this Court finds that the VBPD lacked probable cause and that the VBPD's actions fail to satisfy *Gant*, the evidence should nevertheless be admitted because it would have been found pursuant to an inventory search, as noted above. Under the "inevitable discovery" doctrine first articulated by the Supreme Court in *Nix v. Williams*, 467 U.S. 431, 444 (1984), improperly seized evidence may nevertheless be admitted "[i]f the prosecution can establish by a preponderance of the evidence that information ultimately or inevitably would have been discovered by lawful means. *See, e.g., United States v. Mobley*, 40 F.3d 688, 693 (4th Cir. 1994); *United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992). The evidence inventoried in Engle's vehicle inevitably would have been discovered by Detective Everett. Lastly, even if the Court rejected each of the grounds supporting the search discussed above, the Court should not apply the exclusionary rule because the search was conducted in good-faith reliance upon pre-*Gant* precedents authorizing searches in circumstances such as this. *See Herring v. United States*, 129 S. Ct. 695, 698 (2009) ("suppression is not an automatic consequence of a Fourth Amendment violation"); *United States v. McCane*, ___ F.3d ___, 2009 WL 2231658 (10th Cir. July 28, 2009)(declining to apply exclusionary rule to a vehicle search conducted before *Gant,* in good faith reliance upon settled case law authorizing the search of a passenger compartment of person arrested for a traffic violation).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny each of defendant's pretrial motions.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: /s/
Robert J. Krask
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Phone: (757) 441-6331
Fax: (757) 441-6689
bob.krask@usdoj.gov

CERTIFICATE OF SERVICE

I certify under penalty of perjury on this 18th day of AUGUST 2009, that I electronically filed the foregoing "CONSOLIDATED RESPONSE OF THE UNITED STATES TO THE DEFENDANT'S PRETRIAL MOTIONS" with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:


RICHARD J. COLGAN
Assistant Federal Public Defender
Federal Public Defender's Office
150 Boush Street, Suite 403
Norfolk, VA 23510
richard_colgan@fd.org


/s/


Robert J. Krask
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
Phone: (757) 441-6331
Fax: (757) 441-6689
bob.krask@usdoj.gov