IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

UNITED STATES OF AMERICA

    v.                                     CRIMINAL NO. 2:09cr70

SHAWN F. ENGLE

**DEFENDANT'S POSITION PAPER ON SENTENCING, INCLUDING RESPONSE TO POSITION OF UNITED STATES REGARDING SENTENCING, AND REQUEST FOR DOWNWARD VARIANCE**

    Defendant, through counsel, hereby submits this position paper in which he objects to the presentence report, responds to the Position of the United States Regarding Sentencing And Motion For An Upward Variance, and applies the Section 3553 sentencing factors.

    Shawn Engle met and had sex with a 17 year old female, who testified at trial that she never did anything with Mr. Engle that she did not want to do. Incidental to the sex, a movie was made. The movie was never exploited financially in any way.

    Shawn Engle wrote letters and placed phone calls to a 13 year old minor in which he discussed sex. He had developed a relationship with this minor after having been told that she was in trouble at home, and considered himself her savior.

    Shawn Engle then corrupted witnesses, made outlandish threats, and otherwise attempted to obstruct justice. Neither of the victims of his offenses ever sought his prosecution. He never physically harmed anyone.

1

Shawn Engle did all of the above while in the throws of untreated and severe mental illness. Because of the extraordinary nature of the defendant's mental illness and the uniqueness of his case, a variance sentence of imprisonment of 180 months is sufficient to carry out the purposes of sentencing. The defendant may call to the witness stand either Mr. Engle's mother or sister in support of his request for a variance sentence.

## **OBJECTIONS TO THE PRESENTENCE REPORT**

Pursuant to Section 6A1.2 of the <u>Sentencing Guidelines and Policy Statements</u> and the Court's Sentencing Procedures Order, the defendant respectfully states that he objects to the pre-sentence report as follows:

1. Worksheet A, Count 1: Mr. Engle objects to the two level enhancement under U.S.S.G. § 2G2.1(b)(6)(B) relating to the use of a computer "for the purpose of producing sexually explicit material." There is no evidence that a computer was used for that purpose.

2. Worksheet A, Counts 3, 4, 5, 9, 10, 11, 12, 13, 14: If the court sustains the defendant's previous objection, the guideline adjusted offense level would be reduced in corresponding fashion to offense level 30 pursuant to U.S.S.G. § 2X3.1(a).

3. Worksheet A, Counts 6, 7, 8: Mr. Engle objects to the two level enhancement under U.S.S.G § 2G1.3(b)(2)(B) for "undue influence and prohibited sexual conduct." The defendant was incarcerated at the time of these offenses, and remains incarcerated. Therefore, no prohibited sexual conduct occurred in connection with these offenses.

4. Worksheet A, Counts 6, 7, 8: Mr. Engle objects to the two level enhancement under U.S.S.G. § 2G1.3(b)(3)(B) for "the use of a computer." The defendant was incarcerated at the

time of these offenses, and remains incarcerated. There was no computer available to the defendant at the time of these offenses.

5. Worksheet A, Counts 6, 7, 8: Mr. Engle objects to the two level enhancement under U.S.S.G. § 2G1.3(b)(4)(A) for "the commission of a sex act or sexual contact." The defendant was incarcerated at the time of these offenses, and remains incarcerated. No sex act or sexual contact, involving this offense, ever took place.

6. Inasmuch as Mr. Engle entered a plea of not guilty, he objects generally to the entire presentence report. He specifically objects to paragraphs 55, 57 and 58 on the ground that the events described therein did not occur. He objects to paragraph 66 in the ground that the defendant's conduct was not criminal, for the reasons argued to the court and the jury at trial. Defendant renews those arguments herein.

If the defendant's objections are sustained, his combined offense level will be affected and recalculated according to the grouping of offenses rules (Worksheet B). Counsel's calculation of the defendant's combined offense level, if all his objections are sustained, is offense level 37.

## OBJECTIONS TO EVIDENCE BEING OFFERED BY GOVERNMENT

1. Testimony of Kristin Quarles: In its position paper, the government states its intention to offer the testimony of Kristin Quarles concerning alleged sexual misconduct on the part of Mr. Engle that occurred in either 2006, or 2008. (The presentence report and the Government position paper conflict on the date). In any event, according to documents supplied by the United

States, these charges were either nol prossed or dismissed after Ms. Quarles did not show up for court, notwithstanding the presence of a second alleged witness. The re-litigation of this issue at this late date is unfairly prejudicial to the defendant, may violate his rights under the double jeopardy clause, and will not assist the court to meaningfully exercise its sentencing authority.

      2. Videotape Interview of K.M.: The United States has opted, throughout this case, not to introduce the testimony of this witness. This witness is, presumably, available to testify in person if the United States sees fit to call her. The use of a videotape statement, since recanted, violates Mr. Engle's Fifth Amendment right to be sentenced on the basis of accurate information and Sixth Amendment right to confront and cross examine adverse witnesses.

## ARGUMENT ON OBJECTIONS

      1.      Worksheet A, Count 1; U.S.S.G § 2G2.1(b)(6)(B); 2 levels; (use of a computer for the purpose of producing sexually explicit material).

      The guideline provides for a two level increase in offense level "If, for the purpose of producing sexually explicit material...the offense involved...(B) the use of a computer or an interactive computer service to (i)persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct..." In order for this enhancement to apply, it must be shown that Mr. Engle used a computer to persuade, induce, entice, coerce, or facilitate the travel of A.M. to engage in sexually explicit conduct, and while doing so had a purpose of producing sexually explicit material. While the evidence did show the use of a computer, and strongly suggests its use to induce or persuade A.M. to engage in sex, it did not show that the computer was used for the ultimate purpose of producing sexually explicit material.

4

Nor does the guideline concept of relevant conduct make the enhancement more appropriate, in that there is no evidence that Mr. Engle was using the computer in preparation for the commission of the sexual exploitation charge. The computer was used by Mr. Engle to facilitate his meeting with A.M. and possibly to persuade her to have sex with him. There is no evidence that, at the time he used the computer, which preceded their two encounters, his purpose was anything other than sexual gratification.

2. Worksheet A, Counts 3, 4, 5, 9, 10, 11, 12, 13, 14: If the court sustains the defendant's previous objection, the guideline offense level would be reduced in corresponding fashion to offense level 30 pursuant to U.S.S.G. § 2X3.1(a).

3. Worksheet A, Counts 6, 7, 8; U.S.S.G. § 2G1.3(b)(2)(B); 2 levels (undue influence and prohibited sexual conduct). This guideline provides for a two level enhancement if the offense involved unduly influencing a minor to engage in prohibited sexual conduct. The language of the guideline suggests that the prohibited conduct actually occur. As the court well knows, this enhancement relates to Mr. Engle's actions while incarcerated in the Virginia Beach City Jail awaiting trial on related state charges. The defendant was incarcerated at the time of these offenses, and remains incarcerated. Therefore, no prohibited sexual conduct occurred in connection with these offenses and the enhancement should not be applied.

Relevant conduct, again, does not make the enhancement more applicable. Any prohibited sexual conduct that occurred before Mr. Engle's incarceration could not possibly be said to have occurred "during" or "in preparation for" his jailhouse offenses. Whatever Mr. Engle has done, he did not engage in sex with K.M. in preparation for a subsequent jail house enticement with nasty letters and phone calls.

4. Worksheet A, Counts 6, 7, 8; U.S.S.G. § 2G1.3(b)(3)(B) 2 levels; (the use of a computer). This guideline provides for an enhancement "if the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct...." Again, the defendant was incarcerated at the time of these offenses, and remains incarcerated. There was no computer available to the defendant at the time of these offenses. And again, Mr. Engle certainly was not preparing for his jailhouse enticement offenses by having sex with K.M.

5. Worksheet A, Counts 6, 7, 8; U.S.S.G. § 2G1.3(b)(4)(A); 2 levels; (the commission of a sex act or sexual contact). This enhancement applies if the offense "involved the commission of a sex act or sexual contact." Again, the defendant was incarcerated at the time of these offenses, and remains incarcerated. As far as this offense is concerned, there was no sex act. And any prior sex act was not in preparation for Mr. Engle's jailhouse offenses.

## THE APPROPRIATE SENTENCE IN THIS CASE

The Sentencing Guidelines are now advisory. *United States v. Booker*, 543 U.S. 220 (2005). This Court's sentence is no longer driven and controlled by the rigidity of the Sentencing Guidelines. Rather, in *Booker's* wake, § 3553(a)(2) directs the Court to consider the need for the sentence imposed:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court must also consider the nature and circumstances of the offense, and the history and characteristics of the defendant, the kinds of sentences available, the sentence recommended by the sentencing guidelines, the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (4), (5), (6), and (7).

A. <u>The history and characteristics of the defendant</u>

Mr. Engle has a long history of factors that mitigate his offense. Abandoned by his father at an early age, sexually abused on numerous occasions by different people, hospitalized many times for emotional problems, a loner, emotionally immature, gargantuan in size, and low average intelligence are some of the descriptions of Mr. Engle. Most important is his long and involved history of mental illness. Family members describe Mr. Engle as being in and out of mental hospitals his entire life.

Medical records establish that Mr. Engle was treated for his severe emotional problems in 1993. The discharge summary from his three week admission to Belmont Pines Hospital state a diagnoses of schizo-affective schizophrenia with depressive mood. He exhibited loss of control and lost contact with reality. He was given powerful medications. According to the PSR, Mr. Engle received treatment after this date, but not since 1996. As a result, he has been living his life with untreated and severe mental illness for many years.

Courts have long considered a defendant's diminished mental capacity as a mitigating

factor in sentencing. In guideline terminology, "A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. Post *Booker*, sentencing courts have the authority to impose variance sentences, even where downward departures are unavailable. The guideline formulation of diminished capacity is a useful benchmark in the determination of the appropriate sentence in this case. The application note to §52K.13 defines "significantly reduced mental capacity" as follows: "'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. §5K2.13, comment (n.1). [1]

Mr. Engle has been evaluated by Dr. David Keenan, Licensed Clinical Psychologist and Forensic Evaluator. Dr. Keenan has had the benefit of examining Mr. Engle on two occasions, having previously performed a court ordered competency evaluation while Mr. Engle's case was pending in state court. Dr. Keenan has reviewed all of the medical and psychiatric records the defense has been able to obtain, Dr. Glenn Rex Miller's evaluation, the presentence report, and has spoken to Mr. Engle's mother. He has concluded unequivocally that Mr. Engle suffers from the mental illness known as Bipolar Disorder, that this condition existed at the time of the offenses of conviction, that this condition has significantly and negatively impacted his ability to control his wrongful behaviors and contributed substantially to the commission of the instant

---

[1] The guidelines precluded departures for diminished capacity in cases involving convictions under 18 U.S.C. §2251, however, *Booker* rendered the guidelines advisory and the concept of departures antiquated.

offenses. Dr. Keenan's report has been provided to the United States and will be filed with the Court under seal.

By any legal measure, including the guideline formulation, Mr. Engle suffers from a diminished mental capacity. Psychological evaluations as early as when Mr. Engle was eight have found that he is mentally ill. Defendant began receiving mental health treatment at the age of eight. According to his mother and medical records, throughout his life Engle has been diagnosed with numerous mental health disorders, including bipolar disorder, severe ADHD, and issues with anger. PSR 86-89. Engle was prescribed Depakote, Welbutrin, Ritalin, and Lithium until he was 18 years old. He was last treated for Bipolar Affective Disorder in 1996. At that time he was prescribed Depakote (an anti-convulsant used to treat mania) and Welbutrin (an anti-depressant). Health records reveal that Engle was treated at Atlantic Psychiatric Services from October 1992 until October 1993. He has had various psychiatric hospitalizations. He was initially diagnosed with Schizo-affective Disorder, major depression, impulse control disorder, and borderline personality traits. PSR 87. Engle has been prescribed myriad psychiatric medications throughout his lifetime. Dr. Keenan, Licensed Clinical Psychologist and Forensic Evaluator, in June 2010, concluded that Engle suffers from bipolar disorder that has essentially been untreated since his adolescent years.

According to DSM-IV, bipolar disorder is characterized by the occurrence of one or more manic or mixed episodes often accompanied by depressive episodes. A Manic Episode is defined by a distinct period during which there is an abnormally and persistently elevated, expansive, or irritable mood. A Depressive Episode is a period during which there is either depressed mood or the loss of interest or pleasure in nearly all activities. A Mixed Episode is

9

characterized by a period of time in which the criteria are met both for a Manic Episode and for a Major Depressive Episode nearly every day. According to an article in the Journal of Clinical Psychology, co-morbidity is the rule and not the exception in bipolar disorder, with Disorders of eating, sexual behavior, attention-deficit/hyperactivity, and impulse control co-occurring with bipolar disorder in clinical samples. *J. Clin Psychiatry*, 2004; 65 Suppl 15:35-44; Clinical Variable and Implications of the Personality of Bipolar Illness: a Pilot Study; *Neuropsychiatr Dis Treat.* 2007 April; 3(2): 269-275.

    Engle has presented with all of these conditions. During the manic phase of bipolar disorder judgment is often impaired and individuals may show lack of insight, inappropriate humor and behaviors, impulsiveness, financial extravagance, grandiose thinking, and hyper sexuality. See "*Bipolar Disorder: A Clinician's Guide to Treatment Management*," edited by Lakshmi N. Yatham and Vivek Kusumakar. Routledge, New York, 2009. Engle's grandiosity (claims of being a country and western star, special forces trained), his impulsiveness (the interminable letter writing and phone usage knowing full well his mail and calls were being monitored), his hyper sexuality (as evidenced by the overtly sexual tone of his writings), his disordered judgment and lack of insight were all on full display during the course of these proceedings. Shawn Engle is suffering, classically and severely, from bipolar disorder.

    A downward variance in sentencing based on diminished capacity is merited in this case. There is no evidence to contradict that Mr. Engle is suffering in the throws of this untreated mental disorder. Dr. Keenan has specifically found that Mr. Engle was suffering from this disease at the times of the offenses and that the disease "significantly, negatively impacted his ability to control his wrongful behavior." Mr. Engle therefore clearly meets the standard that

the defendant be suffering from significantly reduced mental capacity at the time of the offense and that this significantly reduced mental capacity contributed substantially to the commission of the offense.

In its Motion for Upward Variance, the United States argues that the defendant is a dangerous man. In the excruciating course of this case, Mr Engle' impulsivity and inability to control his conduct has astonished all participants. But he has never physically harmed a single person. There have been numerous outbursts and countless threats, usually accompanied by aggrandized claims of physical prowess or combat ability. Many of these threats and claims came when Mr. Engle knew he was being recorded.

The United States argues in its Motion for Upward Variance that the Defendant's conduct in January 2010, in which he allegedly tried to orchestrate an attack on a key witness, shows that he had moved beyond verbal threats to overt acts. At the time of these events, Mr. Engle was housed in solitary confinement on the 5th floor of the Norfolk City Jail. A Sheriff's Deputy guarded the access to the cell at all times. A small window on the door of the cell was the only point through which the Defendant could see or be seen. The kind of interaction described by the United States in the materials supplied to defense counsel which it claims supports Mr. Engle's "plot" could not have occurred in such a restrictive environment.

On the other hand, the individuals who Mr. Engle supposedly solicited were sophisticated prisoners. One knew very well the intricacies of "cooperation" and the benefits that might accrue therefrom. Each was serving lengthy prison sentences. One involved numerous offenses involving lying, cheating, and/or stealing.

Mr. Engle has never carried into action any of the threatening words he has uttered. There was no violence associated with his offenses. There was no substantial step indicating that he would act on these words, as he has never acted on any of the threats he has made. The threats he makes are simply a by-product of his mental illness.

Moreover, the sentencing factors of §3553(a) and the mandate to impose a sentence that is reasonable and no greater than necessary to comply with the purpose of sentencing will be met by imposing a lesser sentence. Therefore, Defendant requests that the court impose a variance sentence to satisfy the mandate of §3553(a). A sentence of 180 months, under the circumstances, is sufficient to carry out the purposes of sentencing.

B.  The nature and circumstances of the offense

Mr. Engle's mental illness played right into his commission of the offenses involving K.M. At trial the court heard testimony that K.M. went missing after an allegation that she had been raped by G.G and T. H . Further, evidence was presented that this information was communicated to Mr. Engle. Mr. Engle's mental illness allowed him to view himself as K.M.'s savior, a self image that reveals itself in his many writings on the subject. Whether referring to himself as Superman, engaging in phone sex which he knows is being recorded, or making outlandish threats against prosecutors, or seeking to corrupt witnesses, Mr.Engle's mental illness was readily apparent. His lack of judgment and insight, his impulsiveness, his grandiosity reveal a classic case of bipolar disorder.

C.  <u>The kinds of sentence available</u>

A conviction under Count 1 carries a range of punishment of 15 years to 30 years imprisonment. Counts 6, 7, and 8 carry a range of punishment of 10 years to life imprisonment. The remaining counts carry a maximum of 20 years imprisonment.

D.  <u>The sentence recommended by the sentencing guidelines</u>

Counsel has calculated the guideline range as follows: Offense level 37, criminal history category II, with a guideline range of 235-293 months. The probation officer has a differrent calculation.

E.  <u>The need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct</u>

The "conduct" the defendant has been found to have engaged in is not similar to other defendants who have been convicted under these statutes. The defendant did not seek out children to exploit them cinematically (count I). He is not a distributor or producer of pornography. The video in question was incidental to the encounter between Mr. Engle and A.M., not the reason for it. Further, A.M. was just barely a minor, being less than a year shy of her 18th birthday. With regard to counts 6, 7 and 8, few defendants, if any have ever been convicted of these crimes for writing what amounts to inappropriate love letters from a prison cell. The United States has asked the court to impose a sentence of 480 months. With all due respect, such a sentence would be reversible error. Consider:

1. *U.S. v. Grubbs*, 585 F. 3d 793 (4th Cir. 2009)

Grubbs had been a middle-school language-arts teacher and coach, in addition to being a Sunday-school instructor and Boy Scouts volunteer. Numerous underage victims provided evidence that Grubbs had sexually assaulted them after school, on weekends, and on out-of-state trips. He would give his victims gifts, as well as better grades, in exchange for their sexual acts. Grubbs was indicted and convicted on six counts of transporting a minor in interstate commerce with the intent to engage in sexual activity, and six counts of traveling in interstate commerce for the purpose of engaging in a sexual act with a minor.

Mr. Grubbs received a sentence of 240 months.

2. *U.S. v. Hooper* 338 Fed.Appx. 866, 867-868, 2009 WL 2178829, 1 (C.A.11 (Ga. - 2 (C.A.11 (Ga. (C.A.11 (Ga.),2009).

In preparing a pre-sentence investigation report ("PSI"), the probation officer provided the following background information. In March 2003, Hooper was convicted in Tennessee of sexual battery; according to the police report in that case, a 17-year old girl referred to as "CG" reported that Hooper had come to her residence and forcibly raped her. Less than two months after Hooper's conviction in that case, and while he was out on probation, Tennessee law enforcement officers responded to a report by CG of aggravated assault, and, upon their arrival, she informed them that Hooper had choked and raped her. The officers located Hooper nearby, who, being armed with knives, swung a knife at an officer, attempted to steal a patrol car, and punched an officer in the head two or three times. Although CG later declined to pursue the rape charge against Hooper, he was convicted of three counts of aggravated assault, assault, resisting arrest, and evading arrest. Hooper was ultimately released from custody in September 2005.

1. Some time in late 2005 or early 2006, Hooper, then 27 years old, and the victim in this case-referred to here as "LD"-then 14 years old, began a sexual relationship. In May 2006, LD's mother called the police after learning that LD was pregnant with an older man's child. In response, Detective Caroline Cobb of the Walker County, Georgia, Sheriff's Office spoke to Hooper on the telephone, and Hooper informed her that he was 27 years old, was the father of LD's unborn

child, and was on probation for sexual battery in Tennessee. A few days later, Hooper was charged with statutory rape in Georgia and was subsequently released on a $5,000 bond. Despite being admonished not to contact LD, LD's stepfather informed Detective Cobb that Hooper called LD less than 15 minutes after he was released on bond.

On June 14, 2006, law enforcement officers in Tennessee obtained a warrant charging Hooper with violating sex offender registration laws, as he had moved without providing proper notification. The following morning, LD's mother and stepfather discovered that LD was missing. LD's stepfather informed Detective Cobb that LD had been upset the previous evening after learning that Hooper was to be arrested in Tennessee, and he discovered that LD had left the house through her bedroom window at some point during the night.

**2 The following evening, law enforcement officers in Jacksonville, Florida, found *868 Hooper and LD sleeping on a public beach. The officers ultimately learned that Hooper had picked up LD the previous day, traveled to Tennessee with her, and stayed in a motel room, where they engaged in sexual intercourse. Then, on their way to Jacksonville, they traveled through Georgia, stopping at a rest area where they engaged in sexual activity in a wooded area. They also engaged in sexual activity on the beach in Jacksonville. Hooper informed the officers that he knew that LD was 14 years old, but thought it was "okay" since he was the father of her unborn child.

*Id*. Mr. Hooper received a sentence of 190 months.

3. U.S. v. McDaniel 260 Fed.Appx. 182, 183-184, 2007 WL 4455382, 1 (C.A.11 (Fla. (C.A.11 (Fla.),2007)

According to the presentence investigation report ("PSI"), McDaniel met "C" in an internet chatroom. McDaniel was 19 years old when he met "C," and he knew that she was 12 years old. McDaniel later learned that "C" was a rape victim. For about a year and a half, McDaniel and "C" communicated via chatrooms, e-mails, and cellular telephones. Eventually, their contact became romantic in nature, and McDaniel arranged to travel from Texas to Florida to have sexual activity with "C." "C" 's father discovered that McDaniel was communicating with his daughter, so he contacted McDaniel, informed him that his daughter was 14 years old, and asked him to stay away from her. McDaniel said he would leave "C" alone, yet he continued with his plans to meet "C." Subsequently, McDaniel flew from Texas to Florida to meet "C." Eventually, he took her to a *184 hotel room

where McDaniel and "C" had sexual contact, but not intercourse.

U.S. v. McDaniel 260 Fed.Appx. 182, 183-184, 2007 WL 4455382, 1 (C.A.11 (Fla. (C.A.11 (Fla.),2007)

Mr. McDaniel received a sentence of 120 months.

The statutes of conviction have been used creatively by the United States in this case to obtain convictions for conduct that could never have been anticipated by the drafters of the legislation. This, combined with the defendant's mental illness , make this case unique, so that no disparity will be created by the imposition of a variance sentence.

F.  <u>Reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense</u>

A guideline sentence is far more than is necessary to carry out this sentencing policy.

G.  <u>Deterrence</u>

A guideline sentence is greater than is necessary to carry out this sentencing factor.

H.  <u>Protecting the Public and Providing Rehabilitative Opportunities</u>

A fifteen year sentence with a requiremnet that the defendant receive medical and psychiatric help, will carry out the purposes of sentencing.

WHEREFORE, in light of the statutory factors and arguments above, Mr. Engle asserts that a sentence not exceeding 180 months incarceration would be appropriate to fulfill the purposes of sentencing under the Sentencing Reform Act.

Respectfully submitted,
Shawn F. Engle

By: _____/s/_____
Richard Colgan
Assistant Federal Public Defender
Virginia State Bar No.
Counsel for Defendant Shawn F. Engle
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0800 (Phone)
757-457-0880 (Fax)

**CERTIFICATE OF SERVICE**

      I certify that on the 6th day of July, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

                      Robert J. Krask
                      Assistant United States Attorney
                      Office of the United States Attorney
                      101 West Main Street, Suite 8000
                      Norfolk, VA 23510
                      757-441-6331
                      757-441-6689
                      **bob.krask@usdoj.gov**

And by mail to:

                      Karen R. Franklin
                      U.S. Probation Officer
                      Suite 300, 1001 Omni Boulevard
                      Newport News, VA 23606

                      /s/
                      Richard J. Colgan
                      Virginia State Bar No. 19635
                      Attorney for Shawn F. Engle
                      Office of the Federal Public Defender
                      150 Boush Street, Suite 403
                      Norfolk, Virginia 23510
                      Telephone: 757-457-0808
                      Facsimile: 757-457-0880
                      Email Address: richard_colgan@fd.org