1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                    Norfolk Division

3

4    - - - - - - - - - - - - - - - - - -
                                      )
5    UNITED STATES OF AMERICA,        )
                                      )
6          Plaintiff,                 )      CRIMINAL CASE NO.
                                      )         2:09cr00070
7    v.                               )
                                      )
8    SHAWN F. ENGLE,                  )
     also known as Shawn Forrest      )
9    Engle,                           )
                                      )
10         Defendant.                 )
     - - - - - - - - - - - - - - - - - -

11

12                TRANSCRIPT OF PROCEEDINGS
                      (Guilty Plea)
13

                    Norfolk, Virginia
14
                    August 31, 2009
15

16

17   BEFORE:   THE HONORABLE ROBERT G. DOUMAR,
               United States District Judge
18

19
     APPEARANCES:
20
               UNITED STATES ATTORNEY'S OFFICE
21             By:  Robert J. Krask, Esquire
                    Assistant United States Attorney
22                  Counsel for the United States

23             FEDERAL PUBLIC DEFENDER'S OFFICE
               By:  Richard J. Colgan, Esquire
24                  Larry M. Dash, Esquire
                    Assistant Federal Public Defender
25                  Counsel for the Defendant

1          (The hearing commenced at 10:02 a.m.)

2          THE CLERK:  Criminal case 2:09cr70, the United

3    States of America v. Shawn F. Engle, also known as Shawn

4    Forrest Engle.

5          Mr. Krask, is the government ready to proceed?

6          MR. KRASK:  The United States is ready.

7          Good morning, Your Honor.

8          THE COURT:  Good morning, Mr. Krask.

9          THE CLERK:  Mr. Colgan, Mr. Dash, is the defendant

10   ready to proceed?

11         MR. COLGAN:  The defendant is ready, Judge.  Good

12   morning.

13         THE COURT:  Good morning.

14         Mr. Engle, would you come forward to the podium.

15   And you can sort of rest your hands on that podium.

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Mr. Engle, before accepting your plea of

18   guilty in this matter I want to inform you of your rights, be

19   satisfied that you understand them and that you're entering

20   the pleas of guilty freely and voluntarily, with a full

21   understanding of what your rights are.

22         You're to be sworn to answer questions which I

23   propose to put to you in order to be certain that you know

24   what your rights are and that you're indeed guilty of the

25   offenses to which you are pleading.  I intend to question you

1   under oath, on the record, in the presence of your lawyer,

2   about the offenses to which you are pleading as well as other

3   matters, and your answers, if untrue and material to these

4   proceedings, may later be used against you in a prosecution

5   for perjury or false statement, if they are untrue.

6          Do you understand that the Court may question you

7   along these lines?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you further understand that the

10  answers, if untrue, may be used in a prosecution for perjury

11  or false statement?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Would you please swear Mr. Engle.

14         (The defendant was sworn by the clerk.)

15         THE COURT:  Your correct name is Shawn, S-H-A-W-N,

16  F, Engle, E-N-G-L-E, and you are the person named in the

17  pending indictment in the United States District Court for

18  the Eastern District of Virginia, Norfolk Division, Criminal

19  Action No. 2:09cr70.  Is that correct?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And you're over the age of 21.

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And how far did you go in school,

24  Mr. Engle?

25         THE DEFENDANT:  I graduated from high school with a

1    diploma and also completed a vocational tech school.

2        THE COURT:  So you're able to read, write, and speak

3    the English language and understand what I'm saying to you

4    now.

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  As you stand there, are you under the

7    influence of any drugs, narcotic, marijuana or alcohol?

8        THE DEFENDANT:  No, sir.

9        THE COURT:  Have you ever been treated for any

10   mental illness or addiction to narcotic drugs of any kind?

11       THE DEFENDANT:  Yes, sir, as a child.

12       THE COURT:  As a child?  What were you treated for?

13       THE DEFENDANT:  For anger and depression issues.

14       THE COURT:  And are you suffering from any now?

15       THE DEFENDANT:  No, sir.

16       THE COURT:  Have you received a copy of the

17   indictment pending against you in this case -- that is, the

18   written charges made against you in this case -- and have you

19   discussed those charges and the case in general with your

20   attorneys?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  Under the criminal information --

23   criminal information?  I thought it was a superseding

24   indictment.

25       LAW CLERK:  It's a superseding indictment.

1          THE COURT:  All right.  Under the superseding

2     indictment you're charged with transporting or dealing in

3     child pornography, in violation of Title 18, United States

4     Code, Section 2252A(a)(2)(A).  In order for you to be

5     convicted of this offense the government would have to prove

6     beyond a reasonable doubt, in Count One, that you knowingly

7     used, persuaded, induced or enticed a known female minor,

8     under the age of 18, to engage in sexually explicit conduct

9     for the purpose of producing any visual depiction of such

10    conduct, when you knew and had reason to know that such

11    visual depiction would be and later was transported by you in

12    interstate commerce into the Eastern District of Virginia, in

13    violation of Title 18, United States Code, Sections 2251(a)

14    and 2251(e).

15         In order to convict you of the offense charged in

16    Count One the government would have to prove the following

17    essential elements of the offense beyond a reasonable doubt:

18         1.  That you used or persuaded or induced or enticed

19    or coerced a female minor to engage in sexually explicit

20    conduct;

21         2.  That the aforementioned female minor was under

22    the age of 18 at that time;

23         3.  That you voluntarily and intentionally did this

24    for the purpose of producing a visual depiction of such

25    conduct;

1   4. That you knew or had reason to know that the

2 visual depiction would be mailed or transported across state

3 lines or that the visual depiction was mailed or actually

4 transported across state lines.

5   The penalty provided by law for violating Count One

6 is a term of imprisonment of not less than 15 years and not

7 more than 30 years, and a fine not to exceed $250,000, a

8 special assessment of $100, and registration as a sex

9 offender for 15 years, and not less than five years of

10 supervised release.

11   Count Four provides that you tampered with a witness

12 in violation of Title 18, United States Code, Section 1512

13 (b)(2)(B).

14   In order to convict you of the offense charged in

15 Count Four the government would have to prove the following

16 essential elements of the offense beyond a reasonable doubt:

17   That you knowingly and corruptly persuaded the

18 person named in the indictment, C. R., or attempted to do so,

19 or engaged in misleading conduct toward C. R.; that you acted

20 with the intent to hinder, delay, or prevent C. R. from

21 communicating to law enforcement authorities information

22 relating to the commission or possible commission of the

23 offense; that the offense you were trying to persuade them to

24 mislead was a federal offense, and that you believed that the

25 person referenced in the indictment, C. R., might communicate

1    with federal authorities, and that you knew that this was

2    wrong or illegal.

3           The penalty provided by law for violating Count Four

4    is a term of imprisonment of not more than 20 years, a fine

5    not exceeding $250,000, or both, a special assessment of

6    $100, and not more than three years of supervised release.

7           Do you understand what the government would have to

8    prove and the seriousness of the penalty provided by law for

9    Count Four?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Count Six provides that you enticed a

12   minor to engage in sexual activity in violation of Title 18,

13   United States Code, Section 2422(b).

14          In order to convict you of the offense charged in

15   Count Six the government would have to prove the following

16   essential elements of the offense beyond a reasonable doubt:

17          First, that in the Eastern District of Virginia;

18   second, that you used a means of facility of interstate

19   commerce -- and that is you crossed the line -- third, to

20   knowingly persuade, induce, entice or coerce a person younger

21   than 18 years of age; fourth, to engage in sexual activity;

22   fifth, that engaging in such sexual activity would be a

23   criminal offense, in violation of South Carolina Code Section

24   16-6.655(B)(1) or South Carolina Code Section 16-15-140.

25          The penalty provided by law for violating Count Six

1  is a term of imprisonment of at least ten years and a fine

2  not exceeding $250,000, a special assessment of $100,

3  registration as a sex offender for 25 years, and not more

4  than five years of supervised release.

5      Do you understand what the government would have to

6  prove and the seriousness of the penalty provided by law?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  In relation to all three of these

9  offenses, some part or portion of those offenses must have

10  occurred in the Eastern District of Virginia.

11      Do you understand that?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  In relation to the maximum sentence that

14  the Court may impose, you may have heard of guidelines

15  relative to the sentence.  The Court advises you that it may

16  take into consideration all your activities in sentencing

17  you, including activities for which you are not charged and

18  activities for which charges or indictments have been or are

19  being dismissed.

20      Do you understand that the Court may take into

21  consideration all of your activities in determining whether

22  or not to impose the maximum punishment?  Do you understand

23  that?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Do you understand that in addition to

1   any fine or prison sentence that the Court may impose in this

2   case you may be required to make restitution and to

3   compensate any victim who has suffered a loss caused by any

4   of the acts for which you are pleading guilty?  Restitution

5   is not limited only to the victims' actual loss, such as

6   moneys or property stolen or damaged, if indeed there were

7   any, and the return thereof, but includes restitution for

8   such things as medical expenses and psychiatric expenses or

9   other expenses and lost wages, where the victim and other

10  victims may have been injured or suffered mental or other

11  types of damages.

12          Thus, any person who has suffered as a result of the

13  acts for which you are pleading guilty today may be the

14  subject of a restitution order, and that restitution order

15  may be made a part of your sentence and would have the effect

16  of a judgment against you.  Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you understand that the Court may

19  require you to forfeit certain property to the government if

20  it was obtained with the proceeds of this illegal activity or

21  if it was used to commit this illegal activity?  In this

22  case, especially the camera and the inserts into said camera.

23  Do you understand that, sir?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  It may also include anything other than

1    that that you used to facilitate the commission of this

2    activity.  Do you understand that, sir?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  The offense to which you are pleading is

5    a felony.  If your plea is accepted, you will be judged

6    guilty of the offense, and such judgment may deprive you of

7    valuable civil rights such as the right to vote, the right to

8    hold public office, the right to serve on a jury, and the

9    right to possess a firearm.

10             Do you understand you would lose these rights?  Do

11   you understand that, sir?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Additionally, do you understand that the

14   cost of your prosecution or the cost of your incarceration,

15   supervision or probation, if any, may also be assessed

16   against you should I determine you have the funds with which

17   to pay the same?  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand that in addition to

20   any fine, forfeiture, cost of prosecution, incarceration,

21   supervision or probation you will be required to pay a

22   special assessment of $300; that is, a hundred dollars on

23   each count, which is to apply to court costs?  And this is

24   required whether or not you have the ability to pay or not.

25   Do you understand that, sir?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Now, there may be a period of supervised

3    release in addition to any sentence this Court imposes.  The

4    period of time under this statute is five years to life.

5    Your failure to abide by the conditions of supervised release

6    may subject you to an additional period of confinement not in

7    excess of the total number of years of originally imposed

8    supervised release; thus, if you were sentenced to jail for

9    this charge -- and you will be -- then once you are released

10   from jail you would be placed on supervised release for up to

11   five years to life.  If you violate the terms and conditions

12   of supervised release, you could then be sent back to jail

13   for as long as life.  Do you understand that, sir?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you understand that you must register

16   as a sex offender in each jurisdiction in which you reside,

17   are employed or are a student?  Do you understand that you

18   must keep this registration current for a period of 25 years?

19   Do you understand that failure to comply with this

20   registration requirement may subject you to criminal

21   penalties under federal law and would probably be a condition

22   of your supervised release?  Do you understand that you

23   cannot violate this?  Do you understand that, sir?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Now, have you read the plea agreement?

1          THE DEFENDANT:  I have.

2          THE COURT:  Has your lawyer -- have your lawyers --

3   you have two lawyers in this case.  Is that correct, sir?

4          THE DEFENDANT:  That's correct, sir.

5          THE COURT:  And have they both gone over the plea

6   agreement with you?

7          THE DEFENDANT:  They have.

8          THE COURT:  Have they fully explained the plea

9   agreement to you?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Mr. Pierce, if you would be so kind.

12         Mr. Pierce is handing you a document, Mr. Engle.

13  Would you look at this document and tell me if this is the --

14  what that is?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  What is it?

17         THE DEFENDANT:  This is the plea agreement which I

18  have agreed to.

19         THE COURT:  And have you executed it -- that is,

20  signed it -- and initialed all the other pages of the

21  agreement, sir?

22         THE DEFENDANT:  I have, sir.

23         THE COURT:  And, Mr. Colgan, have you initialed all

24  the pages and executed this agreement?

25         MR. COLGAN:  I have, Judge.

```
 1              THE COURT:  I didn't know if -- Mr. Dash, you didn't
 2    sign it, did you?
 3              MR. DASH:  I did, Judge.
 4              THE COURT:  Oh, you did?
 5              MR. DASH:  I initialed it and signed it.
 6              THE COURT:  All right.  Both of you have signed it.
 7              All right.  Mr. Engle, if you would hand it to
 8    Mr. Dash, he'll hand it to Mr. Krask.
 9              Mr. Krask, on behalf of the United States Attorney
10    have you executed this agreement and initialed all the pages?
11              MR. KRASK:  Yes, Your Honor, I have.
12              THE COURT:  All right.  Mr. Pierce, if you would get
13    it from Mr. Krask.
14              Mr. Engle, I'm ordering this plea agreement filed,
15    subject to the acceptance of a plea of guilty to these
16    charges.
17              I want to emphasize to you that you don't have to
18    plead guilty.  I want to emphasize to you that you can change
19    your mind right now and say, "Look, I don't want to plead
20    guilty," and these proceedings and that agreement cannot be
21    used against you.  Do you understand that?
22              THE DEFENDANT:  I do, sir.
23              THE COURT:  Excuse me.
24              Mr. Colgan, have we got that addition to the plea
25    agreement in here?
```

         MR. COLGAN:  Judge, the -- you have the final,
Judge.

         THE COURT:  I do?

         MR. COLGAN:  Yes, sir.

         THE COURT:  All right.  Have we got the factual
situation straight?  Because the word "corruptly" was not in
there.

         MR. KRASK:  Yes, Your Honor, we added that.

         THE COURT:  All right.  Thank you.

         In the plea agreement, Mr. Engle, it contains a
clause whereby you agree to a specific sentence range within
a range of 180 to 240 months, a lifetime period of supervised
release and a special assessment which you agree would
constitute an appropriate disposition of the case.  You can
do this under the Federal Rules of Civil Procedure, which is
under Rule 11.

         This agreement is binding only if the Court accepts
the plea agreement and will so sentence you in accordance
therewith.  If the Court doesn't accept the plea agreement,
you will be entitled to a trial, and you can withdraw this
agreement.

         My tendency is to -- when everyone agrees under
certain circumstances, is to accept certain plea agreements
under 11(c)(1)(C), which is a fixed sentence agreement.  This
particular agreement is not a fixed sentence in the sense

1   that it leaves some leeway; that is, between 180 and

2   240 months.  And my tendency is to accept it.  Generally,

3   however, in a case of this nature I would defer a decision as

4   to whether the sentence agreed upon by the parties represents

5   the appropriate disposition of the case until I have received

6   a presentence report, because I don't know what your prior

7   history is, Mr. Engle, and I want to look at that.

8           The presentence report will be prepared by the

9   Probation Office prior to any sentencing hearing.  Therefore,

10  I don't want to accept the plea agreement at this time.  I

11  want to tell you that.  I will tell you that I have been

12  accepting them, and unless something unusual occurs I will

13  accept the plea agreement for the fixed sentence.

14          If I reject the plea agreement, and if I feel that

15  the agreement by the parties does not represent the

16  appropriate disposition of the case, I will advise the

17  defendant that you're not required to follow the plea

18  agreement and that you can withdraw your plea of guilty.  The

19  plea of guilty can be withdrawn, and we can proceed to trial.

20          The plea agreement, however, is going to be filed

21  subject to the acceptance of a plea of guilty.  I again

22  emphasize you have an absolute right to plead not guilty, and

23  since you have previously entered a plea of not guilty that

24  you have a right to persist in that plea.

25          Do you understand that, sir?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If you plead not guilty you will have

3     the right to a speedy and public trial by a jury.  At that

4     trial you have the right to the assistance of a lawyer, the

5     right to confront and cross-examine witnesses against you,

6     and you cannot be required to incriminate yourself.  Do you

7     understand these rights?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If you pled not guilty at a trial you

10    may not be required to testify, and any such failure to

11    testify at a trial may not be commented upon, nor may the

12    Court or jury draw any inference from any such failure to

13    testify.  Do you understand this right?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, if you plead guilty to these three

16    counts you waive all of these rights.  Do you understand

17    that, sir?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand that if I accept your

20    guilty plea there will be no further trial of any kind in

21    this matter, merely a hearing to determine the sentence which

22    will be imposed upon you.  Do you understand that, sir?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you further understand that if you

25    plead not guilty the United States would have the burden of

1  convincing each and every member of a jury composed of 12

2  persons of your guilt by competent evidence beyond a

3  reasonable doubt as to each of these three charges?  Do you

4  understand that, sir?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you understand that you would have

7  the right to use the power and process of this court to

8  compel the production of any evidence, including the

9  attendance of any witnesses on your behalf, but if I accept

10  your guilty plea you would lose that right.  Do you

11  understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  If you persist in your desire to plead

14  guilty to these three counts, as I explained to you at the

15  outset, I may ask you questions about the offense, and if you

16  answer these questions under oath, in the presence of your

17  attorney, your answers, if untrue and material to these

18  proceedings, may later be used against you in a prosecution

19  for perjury or false statement, if untrue.  Do you understand

20  that the Court may question you along these lines?

21          THE DEFENDANT:  I do, sir.

22          THE COURT:  Every person has a right to be free from

23  an unreasonable search by a law enforcement agent, whether

24  federal or state, and the seizure of evidence in relation to

25  that search.  Do you feel that any of your constitutional

1  rights have been violated in any way in connection with the

2  seizure of any physical or tangible evidence relating to your

3  offenses by any police or other law enforcement agent,

4  whether federal or state?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Have they violated your constitutional

7  rights?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Do you feel that any of your

10  constitutional rights have been violated in any way in regard

11  to the taking of any oral or written statement from you by

12  any police, governmental or law enforcement agency or by

13  anyone directly or indirectly having a connection with such

14  agency or a person in such agency?  Have they violated your

15  constitutional rights?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Has anyone, including your attorney or

18  the United States Attorney, made any promise of leniency or

19  promise of any kind in return for a plea of guilty to these

20  three counts other than that which is contained in the

21  written plea agreement which has been filed herein, subject

22  to the acceptance of a plea of guilty to each of these

23  counts?  Has any other agreement been made to you?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Any promises of any kind?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Has anyone threatened you in any way or

3    used force against you to induce you to plead guilty?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Do you understand that any

6    recommendation by the prosecution, or any recommendation by

7    the defense or any movement not to oppose your attorney's

8    request for sentence is not binding upon the Court?  The

9    Court will sentence you in accordance with the agreement in

10   the plea agreement, if the plea agreement is accepted.  Do

11   you understand that, sir?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Have you had the opportunity to discuss

14   your case with your attorneys, Mr. Colgan and Mr. Dash?

15         THE DEFENDANT:  I have, sir.

16         THE COURT:  Have you discussed all of the facts in

17   this case with your attorneys?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Are you satisfied that your attorneys

20   have fully considered all of the facts and discussed with you

21   any possible defenses that you may have to the charges

22   against you?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you understand that there's no parole

25   for this crime?

1        THE DEFENDANT:  I do, sir.

2        THE COURT:  Now, the statute under which you are

3   charged sets forth the maximum and minimum sentences which

4   can be imposed in these counts, and sentencing guidelines

5   have been established which must be used to determine -- or,

6   that is, to advise the Court in determining the actual

7   sentence which will be imposed upon you.

8        These guidelines require the Court to take into

9   account the actual conduct in which you were engaged,

10  consider the victims of your offense, the role that you

11  played, and whether or not you've engaged in any obstruction

12  of justice or have accepted responsibility for your acts.  Do

13  you understand that?

14       THE DEFENDANT:  I do, sir.

15       THE COURT:  Do you understand that your criminal

16  history or the lack thereof is an important factor in

17  applying the advisory sentencing guidelines?  Do you

18  understand that?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Now, the Court has the right to depart

21  upwards or downwards from the advisory sentencing guidelines

22  and will not do so until it receives a presentence report.

23       Now, a presentence report must be prepared by the

24  Probation Office of this court.  It sets forth your personal

25  history as well as the facts of this case.  Until such a

report is completed, it is impossible for either the Court or
for your lawyer to know what sentence range will be
prescribed by the advisory guidelines.

In any event, if I accept the plea agreement and all
the consequences of the plea agreement your sentence will
still be within the range prescribed by the plea agreement.
Do you understand that, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, the Court will follow the
procedures set forth in the guidelines when it determines
your sentence, but I can only do that after receiving the
presentence report.  And it may be necessary to resolve
disputed facts contained in the presentence report, and the
resolution of these facts may affect the application of the
advisory guidelines.

Have you discussed the sentencing guidelines with
your attorneys, Mr. Colgan and Mr. Dash?

THE DEFENDANT:  I have, sir.

THE COURT:  Have they explained to you the various
considerations which go into determining which advisory
guideline might apply to your case?

THE DEFENDANT:  They have.

THE COURT:  Do you understand that at this point it
is unlikely that they can be specific as to the guideline
which will apply in your case because they do not have all of

1    the necessary information, since they have not seen the

2    presentence report because it hasn't been prepared yet?  Do

3    you understand that, sir?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you understand that you will not be

6    able to withdraw your plea on the ground that your lawyer's

7    prediction as to the guideline range -- well, you can

8    withdraw your plea at any time because I haven't accepted

9    your plea yet, Mr. Engle.  So this wouldn't apply right now.

10             But once I accept your plea agreement, if I do so

11   after seeing the presentence report, you will not be able to

12   withdraw your plea on the ground that your lawyer's

13   prediction as to the guideline range within that plea

14   agreement notification proved to be an error or inaccurate in

15   any way.  Do you understand that.

16             THE DEFENDANT:  I do, sir.

17             THE COURT:  Now, your plea agreement contains a

18   clause whereby you waive your right to appeal any sentence

19   imposed upon any ground whatsoever, so long as that sentence

20   is within the statutory maximum.

21             Do you understand that you're giving up your right

22   to appeal -- that is, that you, by executing the plea

23   agreement, pleading guilty, having the Court accept that

24   guilty plea -- and, therefore, you will not appeal any

25   sentence imposed by this Court?  Do you understand that?

1          THE DEFENDANT:  I do, sir.

2          THE COURT:  Now, on the other hand, the government

3   indicates that it has a right to appeal any sentence that

4   this Court imposes.  And that's contained in the plea

5   agreement.

6          Merely because I'm telling you what's in the plea

7   agreement does not mean that I'm ruling on the plea

8   agreement.  I have misgivings about what's called the

9   mutuality of remedy in contract; however, nobody seems to do

10  anything about it.  But, anyhow, I still have that problem.

11         Mr. Colgan and Mr. Dash, has the defendant been

12  competent and able to cooperate with you in this case?

13         MR. COLGAN:  He has, Judge.

14         MR. DASH:  Yes, sir.

15         THE COURT:  Have each of you discussed the facts of

16  this case in detail with the defendant, Mr. Engle?

17         MR. COLGAN:  I have, Judge.

18         MR. DASH:  Yes, sir.

19         THE COURT:  Are each of you satisfied that there are

20  no meritorious defenses that the defendant might raise in

21  this case which in your opinion would result in a not guilty

22  verdict by a jury to any one of these three counts?

23         MR. COLGAN:  Yes, Your Honor.

24         MR. DASH:  Yes, sir.

25         THE COURT:  Are you satisfied that the defendant

1    Mr. Engle's constitutional rights have been observed

2    heretofore in this case?

3            MR. COLGAN:  Yes, Judge.

4            MR. DASH:  Yes, Your Honor.

5            THE COURT:  Are you satisfied that as the defendant,

6    Mr. Engle, stands before the bar today that he's not under

7    the influence of any drugs, narcotic, marijuana or alcohol?

8            MR. COLGAN:  Yes, sir.

9            MR. DASH:  Yes, sir.

10           THE COURT:  Do either of you know of any reason of

11   any nature which would prevent the defendant, Mr. Engle, from

12   pleading guilty to these three counts of the indictment?

13           MR. COLGAN:  No, sir.

14           MR. DASH:  No, Your Honor.

15           THE COURT:  Now, Mr. Engle, what I'm going to do is

16   to take the indictment and to read to you each count, and

17   then I'm going to ask you how you plead.

18           I want to emphasize to you that you still have an

19   absolute right to plead not guilty, and these matters

20   contained here today can't be used against you.  Do you

21   understand that?  It will be as if they never took place.  Do

22   you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  All right.  This is the superseding

25   indictment:

1          In the United States District Court for the Eastern

2     District of Virginia, Norfolk Division, United States of

3     America v. Shawn F. Engle, Criminal Action No. 2:09cr70.  It

4     was handed down in the August, 2009, term in Norfolk,

5     Virginia.

6          At all times material to this indictment, defendant

7     Shawn F. Engle, who was then approximately 30 years old, used

8     instrumentalities of interstate and foreign commerce to meet

9     and to communicate with two teen-age girls, among others.

10          2.  KM, a minor, who was approximately 13 years old

11     when she and the defendant Shawn F. Engle, began

12     communicating with one another.  She lived outside of the

13     Commonwealth of Virginia.

14          AM, a minor who was approximately 16 to 17 years old

15     when she and the defendant Shawn F. Engle began communicating

16     with one another, lived outside of the Commonwealth of

17     Virginia.

18          4.  Defendant Shawn F. Engle communicated with KM

19     and A. M. in interstate commerce using the telephone,

20     telephone text messages, the United States mails, and by

21     computer and Internet.

22          5.  On or about April 16, 2008, and on or about

23     April 25 through 27, 2008, defendant Shawn F. Engle traveled

24     in interstate commerce to Pennsylvania to meet A. M.

25          On or about August 30th, 2008, defendant Shawn F.

Engle traveled in interstate commerce to South Carolina to meet KM and brought her to Virginia Beach.

On or about October 24, 2008, defendant Shawn F. Engle was arrested in Virginia Beach pursuant to a South Carolina arrest warrant charging him with kidnapping KM

On or about October the 27th, 2008, defendant Shawn F. Engle was also charged in Virginia Beach with having carnal knowledge, without the use of force, of KM, a 13-year-old child, and with abducting KM, a child under the age of 16, for the purpose of concubinage or prostitution.

8.  The general allegations contained in paragraphs 1 through 7 above are hereby realleged and incorporated by reference into Counts One through Fourteen below, as if fully set forth therein.

Count One:

On or about April 25th through April 27th, 2008, in the Eastern District of Virginia and elsewhere, defendant Shawn F. Engle did knowingly use, persuade, induce and entice a female minor under the age of 18 -- that's A. M. -- to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, when the defendant Shawn F. Engle knew and had reason to know that such visual depiction would be, and later was, transported by him in interstate commerce into the Eastern District of Virginia between on or about April 27, 2008, and October the

24th, 2008, and which visual depiction was produced using
materials that had been mailed, shipped and transported in
interstate and foreign commerce.

To this Count One of the indictment, sir, how do you
plead?

THE DEFENDANT:  I plead guilty, sir.

THE COURT:  Are you entering this plea of guilty
freely and voluntarily, Mr. Engle?

THE DEFENDANT:  I am, sir.

THE COURT:  Are you pleading guilty because you are
in fact guilty of the offense charged contained in Count One
of this indictment?

THE DEFENDANT:  Yes, sir.

THE COURT:  Count Four:

On or about February 17, 2009, in Virginia Beach in
the Eastern District of Virginia, the defendant Shawn F.
Engle did knowingly and corruptly persuade and attempt to
persuade another person and engage in misleading conduct
toward another person, namely C. R., with intent to hinder,
delay and prevent the communication to a law enforcement
officer of information relating to the commission and
possible commission of a federal offense by defendant Shawn
F. Engle; that is, in a letter dated February 15, 2009,
falsely purporting to be from Drake Elizabeth (sic) to C. R.,
defendant Shawn F. Engle wrote, among other things:

1          "Hey, what's up, brother?  Just got off the phone

2     with you, yeah, and I really gotta watch what I say on this

3     phone because they listen and record everything to use

4     against me.  It sucks, you're right, life really sucks now

5     compared to before.  Definitely don't mention my names on the

6     phone.  LOL.  Yeah, I think they take all my mail here

7     'cause I don't get any.  Yeah, the detective and FBI lady Kim

8     Wright are pretty much going to everyone on my phone and

9     visiting list, lieing trying to get anyone to say something

10    about KM or seeing her in Virginia or with me.  Yeah, no one

11    has seen her in Virginia because she's never been to

12    Virginia, none of my friends know her, have ever seen her, or

13    know anything about her.  That's all our statements.  Her

14    statement and mine state she's never been in Virginia.  Yeah

15    and the Russians are backing me, they come to visit, talk to

16    me on the phone, just the cops lying to try to turn people

17    against me.  Just sucks.  My friends are loyal though...

18    Yep.  Yep.  Best thing to do is not know anything about any

19    of this that's going on you know.  Yeah, they can't find

20    anyone to testify anything about her, no one's seen her

21    around me, and she says she's never been to Virginia, so my

22    lawyer thinks I'll get out in March and be able to sue the

23    police for false charges."

24          In violation of Title 18, United States Code.

25          To Count Four of this indictment how do you plead,

1   sir?

2           THE DEFENDANT:  Guilty, sir.

3           THE COURT:  Are you entering this plea of guilty

4   freely and voluntarily, Mr. Engle?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Are you pleading guilty to Count Four

7   because you're indeed guilty of Count Four?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Count Six:

10          On or about December 22nd, 2008, in Virginia Beach

11  in the Eastern District of Virginia and elsewhere, defendant

12  Shawn F. Engle did knowingly use the mails to attempt and to

13  knowingly persuade, induce and entice a female minor, KM,

14  under the age of 18, to engage in sexual activity for which

15  the defendant Shawn F. Engle could be charged with a criminal

16  offense; namely, the violation of:

17          (a) South Carolina Code, Section 16-3-655(B)(1),

18  prohibiting knowingly engaging in sexual battery, including

19  sexual intercourse and cunnilingus, with a minor (KM) who was

20  then between the age of 11 and 14; and

21          (b) South Carolina, Section 16-15-140, prohibiting a

22  person over the age of 14 from willfully and lewdly

23  committing and attempting to commit a lewd and lascivious act

24  upon and with the body of a child (KM) under the age of

25  16 years, with the intent of arousing, appealing to, and

1  gratifying the lust, passions, and sexual desires of himself

2  and the child; that is, the defendant Shawn F. Engle mailed a

3  letter dated December 20th, 2008, to KM's home addressed in

4  South Carolina with the greeting "Dear Supergirl" in

5  violation of Title 18, United States Code, Section 2422(b).

6          To Count Six of this document, sir, how do you

7  plead?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  Are you entering this plea of guilty

10  freely and voluntarily, sir?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Are you pleading guilty because you are

13  in fact guilty of the offense for which you are charged in

14  Count Six of this indictment?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Mr. Krask -- you can have a seat,

17  Mr. Engle.

18          Mr. Krask, would you please recite the facts which

19  you expect the government would have shown in this case

20  relating to the offenses to which the defendant has pled

21  guilty?

22          MR. KRASK:  Yes, Your Honor.  May I speak to

23  Mr. Colgan for just one moment, sir?

24          THE COURT:  Yes, you may.

25          (There was a pause in the proceedings.)

MR. KRASK:  Your Honor, there's one correction we need to make on the statement of facts.  If we may have the original, I'd like to address that now.

THE COURT:  All right.  Mr. Pierce...

MR. KRASK:  Thank you.

(There was a pause in the proceedings.)

THE COURT:  Mr. Dash, would you get over there and look, too.

MR. DASH:  Yes, sir.

THE COURT:  Thank you.

MR. KRASK:  I apologize for the inconvenience, Your Honor.

THE COURT:  Don't worry about it, Mr. Krask.

(There was a pause in the proceedings.)

THE COURT:  All right, Mr. Krask, go ahead.  You better keep the original and make sure you're reading from the original.

MR. KRASK:  Okay.  That is probably a good idea. Thank you, sir.

And, just for the record, Mr. Colgan called me before court this morning, and, based on some discussions that we had had, he had asked me to take certain language out of the statement of facts that we had put in at his request. So we took it back out, and there was one clause that I had neglected to take out, thinking that it was in the original

1  statement of facts, and Mr. Colgan advised me that it wasn't.

2  So that's the reason for the change.

3          THE COURT:  All right.  I don't care what the reason

4  for the change is.  I want to hear the statement of facts.

5          MR. KRASK:  Yes, Your Honor.

6          If this matter had gone to trial, the United States

7  would have proven the charges contained in Counts One, Four,

8  and Six of the superseding indictment beyond a reasonable

9  doubt by proof of the following facts, among others:

10          After meeting a Pennsylvania minor with the initials

11  A. M. on the Internet in 2008 and then communicating with her

12  by telephone text messages, defendant Shawn F. Engle traveled

13  to Pennsylvania on two occasions in April, 2008, to visit

14  her.

15          THE COURT:  What it didn't say here -- excuse me --

16  is that at the time he was living in Virginia Beach, I take

17  it?  Or he traveled from someplace.

18          MR. KRASK:  He was living in Virginia Beach and in

19  Gates County, North Carolina, but with respect to these trips

20  he did travel from Virginia Beach.

21          THE COURT:  So he traveled either from Virginia

22  Beach or North Carolina to Pennsylvania, correct?

23          MR. KRASK:  He travelled with respect to both trips

24  from Virginia Beach to Pennsylvania and then back.

25          THE COURT:  Is that correct, Mr. Engle?

THE DEFENDANT:  The first trip I traveled from Gates County, North Carolina.  The second trip I picked up a friend's car from Virginia Beach and brought it back to North Carolina, but the original trip was made from my house in North Carolina, sir.

THE COURT:  But you went to Pennsylvania?

THE DEFENDANT:  I did, sir.

THE COURT:  All right.  Thank you, Mr. Engle.

Go ahead, Mr. Krask.  Excuse me for interrupting you.  Go ahead.

MR. KRASK:  On his first visit to Pennsylvania, Your Honor, on April 16, 2008, Engle picked up the minor from her high school, took her to a motel and provided her with alcohol -- excuse me one moment, Your Honor.

(There was a pause in the proceedings.)

MR. KRASK:  -- and according to Engle engaged in sexual activity.  Nine days later Engle returned to Pennsylvania on the weekend of April 25th through 27th, 2008. He again picked up the then 17-year-old minor, provided her with alcohol, and took her to a motel room and encouraged and induced her to engage in sexual activity.  Engle used a video camera that he brought along for the trip to film the minor engaging in sexual acts with him, which acts constituted sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2).  Defendant Engle then returned

1  with the video camera to the Eastern District of Virginia, as

2  charged in Count One of the superseding indictment.

3      On October 24, 2008, in Virginia Beach, Virginia,

4  investigators with the Virginia Beach --

5      THE COURT:  Slow down a minute.

6      MR. KRASK:  Yes, sir.

7      (There was a pause in the proceedings.)

8      THE COURT:  Go ahead.

9      MR. KRASK:  On October 24th, 2008, in Virginia

10  Beach, Virginia, investigators with the Virginia Beach Police

11  Department recovered the video camera from defendant Engle's

12  vehicle, following his arrest upon an outstanding warrant

13  from South Carolina.  Investigators searched the camera

14  pursuant to a court-authorized warrant and found that it

15  contained an SD memory card which contained the

16  above-described video involving the minor and defendant

17  Engle.

18      Months before his October, 2008 arrest, defendant

19  Engle also entered into a personal relationship with another

20  minor with the initials KM who lived in South Carolina and

21  was 13 years old at the time of the events described herein.

22  On August 30, 2008, defendant Engle traveled to South

23  Carolina and picked up this minor, who was running away from

24  home after a family crisis.  Defendant Engle then brought

25  this minor to a house on Westgrove Road in Virginia Beach

where he occasionally stayed with acquaintances.  While

there, Engle introduced this minor to his acquaintances as

his "girlfriend."  Approximately one week later Engle

transported the minor to his mother's house in Gates County,

North Carolina, where the minor was eventually recovered by

Gates County authorities on or about September 16, 2008.

Following his late October, 2008 arrest, defendant

Engle was charged in Virginia Beach with having carnal

knowledge of KM and with abducting her for immoral purposes.

While detained and awaiting trial, Engle learned that the FBI

was investigating him for violating federal law and wrote the

letter described in Count Four and dated February 15, 2009,

to a friend who knew of Engle's relationship with KM  Engle

disguised this letter by sending it in an envelope that

contained a return address naming another Virginia Beach

inmate as the sender.  In the letter Engle told the friend

about the FBI investigation and knowingly attempted to

corruptly persuade the friend not to tell the FBI what he

knew about Engle's involvement with   KM with the intent to

hinder, delay, and prevent the communication to a federal law

enforcement officer of information related to the commission

of a federal offense.  Instead, defendant Engle suggested

that the friend falsely indicate that he knew nothing about

KM or her presence in Virginia.

Defendant Engle also wrote letters from the Virginia

1    Beach City Jail and sent them via U.S. Mail to KM in South

2    Carolina, as noted, for example, in Count Six.  South

3    Carolina investigators recovered one such letter dated

4    December 20, 2008, from KM's home in South Carolina.  In this

5    letter, defendant Engle attempted to induce and to entice KM,

6    who he then knew was 13 years old, to engage in sexual

7    activity that, if consummated, could have resulted in Engle's

8    prosecution for violating the South Carolina laws set forth

9    in Count Six.  In the letter the then 31-year-old Engle

10   discussed:  1) his love for his "baby girl" and about how

11   "sexy hot" she was; 2) his plans for immediately returning to

12   South Carolina to his "soul mate" if his charges were

13   dismissed at an upcoming preliminary hearing in early

14   January, 2009, and how he "never wants to be apart from her

15   ever;" 3) how much he liked shaving and licking her and that

16   he wants to "kiss and lick her all over;" 4) how great things

17   would be when they were married; and 5) how, because he had

18   been "unexploded for three months" it would be "incredible"

19   when he returned back to KM

20          THE COURT:  One question I have.  In the indictment,

21   in Count One, it stated "...which visual depiction was

22   produced using materials that had been mailed, shipped and

23   transported in interstate and foreign commerce."

24          Was the camera that was used to depict this

25   particular incident in Pennsylvania mailed, shipped or

1 transported in interstate and foreign commerce prior to the

2 depiction being made?

3       MR. KRASK: Yes. The camera was manufactured

4 outside the United States, and if I may check with the agent

5 I believe it was in China -- in China.

6       THE COURT: The camera was made in China?

7       MR. KRASK: Correct. And, also, Your Honor --

8       THE COURT: Is that correct, Mr. Engle -- or Mr. --

9 Engle?

10       MR. COLGAN: Judge, that's what we understand from

11 discovery material that we received.

12       THE COURT: All right. And those would be in the

13 facts. Okay.

14       MR. KRASK: Your Honor, may I just ask a couple

15 questions I had that I wanted to clarify for the record to

16 make sure that everything is --

17       THE COURT: Right.

18       MR. KRASK: -- done by the book here today?

19       With respect to Count One, the Court has read it

20 several times to the defendant. I don't think there's an

21 issue, but initially the Court referred to it as a charge

22 relating to the receiving, transporting and shipping of child

23 pornography, and the charge is really sexual exploitation of

24 a minor.

25       THE COURT: That's what it really is. I shouldn't

1  have said that, but it is sexual exploitation of a minor.

2           MR. KRASK:  Thank you.

3           And with respect to Count Four initially the Court

4  referred to the violation charged as being Title 18, United

5  States Code, Section --

6           THE COURT:  It's a long section.

7           MR. KRASK:  Yes, 1512(b)(2)(B), and it's Section

8  (b)(3).  And, again, you read it to Mr. Engle.  I think he

9  understands the charge, but --

10          THE COURT:  All right.  Do you understand the

11 charges, Mr. Engle?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.

14          MR. KRASK:  And finally -- I'm sorry, Your Honor.

15 Just one last one and I'll sit down.

16          With respect to Count Six -- and I, frankly, may

17 have missed this -- you indicated the minimum was -- that he

18 faces -- the minimum penalty of ten years, but did the Court

19 ask -- or indicate that the maximum was up to life?

20          THE COURT:  The maximum is life, but you've agreed

21 to a specific sentence in relation to this matter between 180

22 and 240 months.  Isn't that correct?

23          MR. KRASK:  That is correct, Your Honor.

24          THE COURT:  All right.  Mr. Engle, you've heard the

25 facts read and the additional statements made.  Are these

1  facts true, Mr. Engle?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And in which event, Mr. Engle, I'm still

4  going to wait for the presentence report.  Because I have no

5  idea what his prior record is or what Mr. Engle may have been

6  involved in.  Although I place great stress in what the

7  United States Attorney does, I just want to see it for

8  myself.  I hope counsel understand that.

9          Based on that, I'll make a determination at the --

10  prior to sentencing -- at the time of sentencing whether to

11  accept the guilty plea or not, Mr. Krask.

12          MR. KRASK:  Yes, Your Honor.

13          THE COURT:  All right.  Mr. Engle, we've got to set

14  a sentencing date.

15          November the 9th, 2009, at 11:00 a.m. in Norfolk,

16  Virginia.  Is that agreeable with you, Mr. Colgan and

17  Mr. Dash?

18          MR. DASH:  Yes, sir.

19          MR. COLGAN:  It is, Judge.

20          THE COURT:  Mr. Krask, is that agreeable with you?

21          MR. KRASK:  Yes, it is.

22          THE COURT:  Now, Mr. Engle -- and I always require,

23  and Mr. Colgan and Mr. Dash have always attended any

24  interview of you conducted by the Probation Office, and I'm

25  going to ask one of you to be present at any interview of you

conducted by the Probation Office.  And I'll tell the

Probation Office, do not interview Mr. Engle without the

presence of either Mr. Colgan or Mr. Dash at such an

interview under any circumstances unless you have permission

of the Court.  And I'm not about to give any permission

unless the circumstances are really exemplary that would

require something.

Mr. Engle, a probation report will be -- a

presence report will be prepared by the court personnel.

This presentence report will be available 35 days before

sentencing.  Mr. Colgan or Mr. Dash will go over it with you.

You are to go over it and see if there's anything that you

feel is incorrect, because then they have a duty to try to

correct any matters contained in the presentence report with

the opposing counsel and with the Probation Office.  If they

can't get them to agree, then they must file certain

documents.

Seven days before sentencing they've got to file a

position paper with regard to sentencing.  All of this is

contained in the sentencing procedures order.  You'll be

given a copy of this sentencing procedures order, so you'll

know what their duties are as well as what the duties of the

government are and everyone else concerned, including the

Probation Office.  So you'll be given a copy of it, and

you'll be asked to sign a receipt for such a copy.  And I'm

1   entering this order at the present time.

2         Mr. Pierce, the court security officer, will take

3   it, and we'll get everybody to sign a receipt.

4         (There was a pause in the proceedings.)

5         THE COURT:  I want to ask while we're still here.

6   Mr. Krask, I notice you took out of the presentence report

7   any engagement in sexual -- let me see.  What was it?

8         That is, on August the 30th he traveled to South

9   Carolina, and he brought this young lady to Westgrove Road in

10  Virginia Beach.  And you took out the part that he engaged in

11  sexual activity and intercourse with her?

12        MR. KRASK:  Yes, Your Honor.

13        THE COURT:  All right.  I -- okay.

14        Anything else need be done in this matter?

15        MR. DASH:  No, Your Honor.

16        MR. COLGAN:  No, Judge.

17        THE COURT:  Anything else?

18        MR. KRASK:  No, Your Honor.

19        THE COURT:  All right.  We'll recess until noon.

20        (The hearing adjourned at 11:02 a.m.)

21

22

23

24

25

```
 1                      CERTIFICATION

 2

 3           I certify that the foregoing is a correct transcript

 4      from the record of proceedings in the above-entitled matter.

 5

 6                            s/s

 7                      Heidi L. Jeffreys

 8

 9                     September 21, 2010

10                            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```