IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

- - - - - - - - - - - - - - - - - -
                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )        CRIMINAL CASE NO.
                                    )          2:09cr00070
     v.                             )
                                    )
SHAWN F. ENGLE,                     )
                                    )
          Defendant.                )
- - - - - - - - - - - - - - - - - -


TRANSCRIPT OF PROCEEDINGS
(Withdrawal of Guilty Plea)

Norfolk, Virginia

October 8, 2009


BEFORE:   THE HONORABLE ROBERT G. DOUMAR,
          United States District Judge


APPEARANCES:

          UNITED STATES ATTORNEY'S OFFICE
          By:  Robert J. Krask, Esquire
               Assistant United States Attorney
               Counsel for the United States

          FEDERAL PUBLIC DEFENDER'S OFFICE
          By:  Richard J. Colgan, Esquire
               Assistant Federal Public Defender
               Counsel for the Defendant

(The hearing commenced at 10:00 a.m.)

THE CLERK:  Criminal Case No. 2:09cr70, the United
States of America v. Shawn F. Engle, also known as Shawn
Forrest Engle.

Mr. Krask, is the government ready to proceed?

MR. KRASK:  The United States is ready.  Good
morning.

THE CLERK:  Mr. Colgan, is the defendant ready to
proceed?

MR. COLGAN:  Good morning, Judge.  The defendant is
ready.

THE COURT:  Mr. Colgan, this is on your client's
motion to withdraw his plea of guilty.

MR. COLGAN:  Yes, sir, Judge.

THE COURT:  How are we set for Speedy Trial Act
problems, which is important to me, Mr. Krask?  We've got two
motions pending.  Besides that we have -- so we've got to get
these motions heard, now that he's not going to plead guilty.
Let me make sure of that.  I want to have him state so in
open court, Mr. Colgan.  I want to speak with him so we'll
see where we go.

Have you looked at the Speedy Trial Act
implications, Mr. Krask?

MR. KRASK:  I have, Your Honor.  30 days have run
thus far.  There are 40 days remaining on the clock.  The

1    clock is not running because the motions have been pending.

2           THE COURT:  All right.  The clock still isn't

3    running because the motions still are pending.

4           MR. KRASK:  That's correct.

5           THE COURT:  So we'll see where we go.

6           All right, Mr. Colgan, I'd like to hear from Mr. --

7    do you pronounce your name Karner?  Kerner?  How do you

8    pronounce your name?

9           THE DEFENDANT:  Shawn Forrest Engle.

10          THE COURT:  Oh, Engle.  That's right.  Excuse me.

11          All right, Mr. Engle.  My understanding is you

12   desire to withdraw your plea of guilty.  Is that correct,

13   sir?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Now, have you discussed this thoroughly

16   with your counsel, Mr. Colgan?

17          THE DEFENDANT:  I have.

18          MR. KRASK:  Your Honor, under the circumstances can

19   I request that the defendant be sworn in?

20          THE COURT:  Would you please swear the defendant.

21   That's all right, you don't need a Bible.

22          Would you please raise your right hand, Mr. Engle.

23   Do you swear the testimony you are about to give in this

24   matter is the truth, the whole truth, and nothing but the

25   truth, so help you God?

 1          THE DEFENDANT:  Yes, sir.

 2          THE COURT:  All right, Mr. Engle.  Now, Mr. Engle,

 3   tell me, have you gone over this matter thoroughly with your

 4   counsel, Mr. Colgan?

 5          THE DEFENDANT:  I have.

 6          THE COURT:  Now, you understand that Mr. Colgan has

 7   made some agreement with the prosecution which Mr. Colgan

 8   might feel is beneficial to your position but which you do

 9   not feel is beneficial to your position.  Is that correct?

10          THE DEFENDANT:  That is correct, Your Honor.

11          THE COURT:  So, consequently, has he also explained

12   to you the consequences if you are found guilty of what the

13   sentence might be?

14          THE DEFENDANT:  Yes, Your Honor, he has.

15          THE COURT:  Do you understand that the sentence will

16   probably be, if you were found guilty of all of these

17   charges, a great deal more than what you would get if you

18   pled guilty?

19          THE DEFENDANT:  I do, Your Honor.

20          THE COURT:  And, so, you still want to have a trial

21   by a jury?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And you want to withdraw your plea of

24   guilty?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And you've thought about this for some

2     time.  Is that correct?

3          THE DEFENDANT:  Yes, I have, sir.

4          THE COURT:  All right.  I don't see how I have a

5     whole lot of choice here, Mr. Krask, unless you have some

6     good reason why he should not be able to withdraw his plea of

7     guilty.

8          MR. KRASK:  Your Honor, would the Court just inquire

9     of the defendant and make sure that he understands that if

10    the Court grants the motion that the defendant cannot come

11    back later and say that he wants to accept this plea

12    agreement and expect that he would receive the same sentence

13    if, in fact, he was convicted at trial?

14         THE COURT:  Well, he may not be able to, but I don't

15    know.  Mr. Colgan is an excellent attorney, and I can

16    understand that you would be put to some expense.  I may not

17    agree later to allow him to plead guilty, but I don't want to

18    say to somebody I'm going to deny them the right to plead

19    guilty.

20         MR. KRASK:  Maybe I misspoke, Your Honor.  What I

21    meant is that the United States will not be offering him a

22    plea agreement with these terms again, and Mr. Engle needs to

23    understand that.

24         THE COURT:  Do you understand, Mr. Engle, that the

25    government has made certain commitments in your plea

1   agreement for you to enter a plea of guilty?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And that they will not make those

4   commitments in the future when you withdraw your plea.  Do

5   you understand that?

6            THE DEFENDANT:  Yes, sir, I completely understand

7   that.

8            THE COURT:  All right.  Then the plea of guilty is

9   withdrawn.  What have we got for dates to -- first for the

10  various motions that are pending and then the trial date?

11  What have we got there, Lori?

12           THE CLERK:  Your Honor, they talked about possibly

13  Monday, October 26th as a possible date for a motion hearing.

14           THE COURT:  Was there any problem with that?

15           THE CLERK:  Both counsel have agreed to that date.

16           THE COURT:  What do we have on October 26th?

17           THE CLERK:  We have nothing scheduled, Your Honor.

18           THE COURT:  Okay, then let's go.  October 26th for

19  the motion hearings.  Is that agreeable with you, Mr. Colgan?

20           MR. COLGAN:  Judge, I am available that day.  I

21  should bring to the Court's attention, though, that Mr. Engle

22  has this morning informed me that he would like new counsel

23  appointed to represent him in this matter.

24           THE COURT:  Well, he's not going to get new counsel

25  appointed to represent him, Mr. Colgan.  You know, these

1    people start thinking -- and, unfortunately, Mr. Engle, I've

2    appointed excellent counsel, a person who has tried many

3    matters in this Court.  He does an excellent job.  I can

4    understand you may want another lawyer because you don't

5    agree with the advice your lawyer has given you, but I'm not

6    going to give you another lawyer.  Mr. Colgan is capable of

7    doing an excellent job and will do an excellent job for you.

8    If you don't want him, I'm sorry.

9         You can hire anybody you like, Mr. Engle.  You could

10   hire -- you know, you might find some rich lawyer in

11   Washington, D.C. you could hire for about $25,000 or $50,000.

12   There are some around here you can hire for $25,000, I think.

13   So I'm more than willing to have you hire anybody you like,

14   but you don't have a lot of choice when the Court is left to

15   appoint a lawyer.  I'm going to appoint someone who is

16   capable and able, and Mr. Colgan is.  He's practiced before

17   this Court numerous times.

18        And, so, consequently you can make all kinds of

19   motions you want, Mr. Engle, but let me tell you something.

20   Make sure you understand the nature and consequences of your

21   actions.  For every action there is a reaction.  For every

22   force there is an equal opposing opposite force.  And that's

23   what nature tells us, so understand that.

24        But understand you're getting a good lawyer.  You

25   don't have to follow his advice, but at least he can advise

1   you.  Do you understand that?

2               THE DEFENDANT:  Yes, sir.

3               THE COURT:  And I just want to tell you that.  I'm

4   going ahead and we're going to have this hearing on the

5   motions that are now pending, and we'll deal with those.

6   Then subsequently we'll have a trial in this matter.

7               And when is the trial date set?

8               THE CLERK:  There is no trial date set currently,

9   Your Honor.  I have some possible trial dates for you.

10              THE COURT:  Oh, I see.  How about December 1st?

11              MR. COLGAN:  Judge, Mr. Dash is trying this case

12  with me.  He's on leave today, but I spoke with him last

13  night, and he informed me that he has trials every week set,

14  and most of them he thinks -- or at least some of them are

15  actually going to go to trial between November 15th and

16  December 15th, and, so, we would ask for something after

17  December 15th, if the Court --

18              THE COURT:  Mr. Colgan, why does Mr. Dash have to

19  get into this case with you?

20              MR. COLGAN:  Judge, it's a case with great exposure.

21  There are multiple counts, different -- and the cases are

22  divided up by, basically, two separate geographic areas, and

23  we felt that our efforts as an office, as a team, would be

24  better on behalf of Mr. Engle if we could have co-counsel in

25  the case.

1          THE COURT:  What do you say about all this,
2    Mr. Krask?
3          MR. KRASK:  Well, the speedy trial clock would
4    conclude on December 11th if the Court rules on the motions
5    on October 26th, so going past that date is not --
6          THE COURT:  I can't very well go past that date,
7    Mr. Colgan, and I'm not about to deny Mr. Engle a speedy
8    trial.  He's entitled to a speedy and public trial by jury.
9          I'm going to set it for December 1st, Mr. --
10         MR. COLGAN:  Judge, can I just check my book to make
11   sure that I --
12         THE COURT:  All right, Mr. Colgan.  I don't
13   generally appoint or have two counsel in any non-capital
14   case.  This isn't a capital case.
15         MR. COLGAN:  Judge, I have that date available.
16         THE COURT:  All right.  December 1st, 10:00 a.m.  In
17   the meantime, Mr. Colgan, if you have any problems please
18   contact me.  I will consider appointing another counsel with
19   you, but I'm not relieving you by any manner or means,
20   Mr. Colgan.
21         MR. COLGAN:  Well, Judge -- and let me, if I might,
22   just address that point with the Court.
23         In your questions and the information that you gave
24   to Mr. Engle -- I don't think he's necessarily dissatisfied
25   with me, and that's not really the reason for his request for

new counsel.  The problem is that in the course of this
negotiation -- and I can't get into the details, necessarily,
with Your Honor, but I have gained information or reasonably
believe certain things which will result in possibly and
probably me not being able to put on the defense, from an
ethical standpoint, that Mr. Engle has indicated that he
wants presented in this case.

In other words, Judge, I'm handicapped by the
ethical rules, and I might end up in a situation on
December 1st or a week later, even worse, asking the Court to
withdraw for that reason.  And, so, that's the nature of the
problem that we have.

THE COURT:  All right.  Let me ask you a question
here.  I've been reading the report from Pretrial in this
instance.  It indicates that Mr. Engle had been treated for
mental problems until he was 18 years old, and he does have a
history of some really -- some problems; indecent exposure
and things of this nature that are of record.

How about having a psychiatric evaluation,
Mr. Krask?

MR. KRASK:  Your Honor, the Federal Public
Defender's Office has resources to request those types of
examinations.  Mr. Colgan, as you've indicated, is a very
capable counsel.  He may have already done that in this case.
I know of no reason, based on Mr. Engle's appearances before

1    this court, that he's incompetent or unable to --

2         THE COURT:  I'm not even implying that he is.  I'm

3    merely indicating that the report indicated that he had had

4    some problems when he was -- prior to his 18th birthday.

5         MR. KRASK:  I understand that.  I guess without more

6    I don't think that would justify sending him off for a

7    psychiatric examination at this time.

8         THE COURT:  How about you, Mr. Colgan?

9         MR. COLGAN:  Judge, it is something that I have

10   become increasingly concerned about, and --

11        THE COURT:  I'm not planning on sending him away.

12   I'm going to ask Mr. Krask if there's a psychiatrist in this

13   area that can talk to Mr. Engle and see where we go from

14   there.  I think -- Mr. Krask, haven't we used a psychiatrist

15   from the area in the past?

16        MR. KRASK:  There were two that we've used, I think.

17   Dr. Pasquale, who filled that role in the past, has passed

18   away.  I believe there's another, but I don't recall the name

19   off the top of my head, quite frankly.

20        THE COURT:  Why don't you do this:  I think I want

21   to have him examined by a psychiatrist just to make sure that

22   he is fully aware of the consequences, can cooperate with his

23   attorney.  I'm getting a -- when I read this report I

24   immediately began to wonder.  His mother indicated that he

25   had been treated up until he was 18 years old, so I want to

get a psychiatrist merely to testify as to his ability to
understand the nature and consequences of his actions, to be
able to cooperate with his attorney, and that we're not
dealing with somebody who is off in some figment of his
imagination.  His mother says he doesn't see things the same
way other people see things, obviously.  I don't know what
that all means, but he doesn't have a good sense of
perception.

So what I want to do, Mr. Colgan, is have him
evaluated by a psychiatrist, but if he doesn't want to
cooperate with the psychiatrist or if he doesn't want it, I
won't do it.  So you tell me, Mr. Colgan.

MR. COLGAN:  Well, Judge, that goes, I take it, to
the issue of his competency to stand trial and his sanity.

THE COURT:  That's correct.  That's all I'm
interested in.

MR. COLGAN:  Okay.  Judge, I need to take that up
with him.  Would the Court -- is this coming in the nature of
a suggestion to counsel, that I obtain this if I'm concerned
about it, or is the Court ordering it?

THE COURT:  I'm not ordering anything yet.  I'm
wondering what concerns you may have with regard to it,
Mr. Colgan.  And if you do then I will try to get a
psychiatric evaluation done.  I just -- I think Mr. Colgan
might be off in some dream world sometimes.

1           MR. COLGAN:  Judge, I'm Mr. Colgan.

2           THE COURT:  I mean -- excuse me -- Mr. Engle.  Thank

3    you, Mr. Colgan.  Forgive me.  I'm constantly getting names

4    confused.

5           MR. COLGAN:  Judge, I think it probably would be

6    prudent under the circumstances.

7           THE COURT:  All right.  Mr. Krask, in the next

8    24 hours do you think you can find me a psychiatrist that

9    will evaluate him?

10          MR. KRASK:  I'll certainly do my best, Your Honor,

11   and we could submit a proposed order.

12          THE COURT:  If Mr. Krask can find one.  And,

13   Mr. Colgan, see if you can agree with Mr. Krask as to who the

14   psychiatrist might be so that we can get an evaluation of his

15   ability to cooperate with counsel, to understand the nature

16   and circumstances of his defense and what the defense is and

17   so that we get an intelligent response from the defendant.

18          MR. COLGAN:  Judge, while we're at it should we

19   inquire as to sanity at the time of the offense as well?

20          THE COURT:  I see nothing to indicate that, but...

21          (There was a pause in the proceedings.)

22          MR. COLGAN:  Judge, I guess my feeling is if we're

23   going to do it let's get it all out and know where we stand.

24          THE COURT:  It may be wonderful to get it all done,

25   but I haven't had any reason to think that he didn't

1    understand the nature and consequences of what he did.  Not
2    necessarily -- he doesn't have to know it was a crime, he
3    just -- just what he was doing.  And there's nothing in this
4    entire matter of the factual situation that was previously
5    submitted to the Court and the matters that have come before
6    the Court which would indicate in any way that he didn't
7    understand what he was doing, not that he -- whether it was
8    criminal or not is of no consequence.
9          What is really of consequence, Mr. Colgan, is
10   whether he understood the nature and circumstances of what he
11   was doing:  First, accusatorily being with a 13-year-old
12   girl; second, having a video made of a 16-year-old girl.  If
13   he did -- I'm not saying he did or didn't; that's what he's
14   accused of doing -- and transporting that by bringing it into
15   the State of Virginia.  So the real question, then -- if he
16   understood he was taking a video and if he understood he had
17   it with him, tough.
18         Do you see the problem, Mr. Colgan?
19         MR. COLGAN:  I do, Judge, but --
20         THE COURT:  I don't see anything to indicate that he
21   wasn't perfectly sane, it's just a question -- the test now
22   is so hard, Mr. Colgan.  All he has to know is that he has to
23   adhere to what's right.  That's about it.
24         I don't mind going for the question of his
25   competency, but other than that I'm not going for it,

1    Mr. Colgan.

2              MR. COLGAN:  I understand, Judge.

3              THE COURT:  Unless Mr. Krask wants to do it.  If he

4    joins you, you might do that.  What do you think, Mr. Krask?

5              MR. KRASK:  Your Honor, frankly, I'd like to think

6    about it during this 24-hour period that the Court has asked

7    me to --

8              THE COURT:  You've got ten minutes to think about

9    it.  I'm not going to keep holding hearings in this matter.

10   I want to get it done today, if possible.

11             MR. KRASK:  The onus ultimately is on the defense in

12   this case.  The rules provide that if they think that's a

13   defense they're supposed to assert, under Rule 5.2 they're

14   supposed to file a notice, and then the Court can react to

15   that notice and --

16             THE COURT:  There's no notice been filed in this

17   matter.

18             MR. KRASK:  Exactly.

19             THE COURT:  And I'm not about to start it.  So, if

20   you want I'll take a ten-minute recess.  You can make up your

21   mind one way or the other.  But right now all I'm going to do

22   is to -- I want to get you and Mr. Colgan -- that is, defense

23   counsel -- to agree on a psychiatrist that I will appoint

24   to -- and, of course, we'll have to pay for it through the

25   government process.  But other than that, no way, Mr. Krask.

1   Do you want a ten-minute recess to think about it?

2           MR. KRASK:  No, Your Honor.

3           THE COURT:  I don't have any thoughts about it at

4   all.  I just want to make sure the gentleman is competent to

5   make the decisions that he's making.  When he starts making

6   decisions that do not seem to be on the best advice of

7   counsel then it raises a flag.

8           What also raised a flag with me, Mr. Krask, is the

9   fact that he had been treated for some mental condition until

10  he was 18.  I'm not sure -- what is his age today?

11          How old are you, Mr. Engle?

12          THE DEFENDANT:  32, sir.

13          THE COURT:  Well, that's 14 years ago, so I --

14          MR. KRASK:  No, Your Honor, I don't need time to

15  think about it.  If the defense isn't going to file such a

16  notice then I see no reason to go down that road.

17          THE COURT:  Thank you very much, Mr. Krask.

18          All right.  I'm orally ordering a psychiatric

19  evaluation.  Mr. Colgan, you and Mr. Krask get together with

20  a psychiatrist and then I will formally enter such an order

21  appointing that psychiatrist with a limitation on the fees

22  that may be there.  Generally, it's a thousand-dollar

23  limitation, so I'm not interested in $10,000 tests.  I want

24  to see if you can find one.  Let me know.  If not, I can try

25  to find one, get somebody to do a -- to help us in this

1 respect. It's awfully hard. A psychiatric evaluation -- I

2 just want him to go down, talk to the defendant, conduct any

3 tests he thinks are necessary for one day, just to determine

4 his competency to stand trial. That's all I'm interested in.

5 Anything else that has to be done at this time? I

6 will then enter the order, Mr. Colgan, once you and Mr. Krask

7 agree on the individual to be named.

8 MR. KRASK: Do we have a time for the October 26th

9 hearing?

10 THE CLERK: 10:00.

11 MR. KRASK: 10:00?

12 THE COURT: 10:00, October 26th.

13 MR. COLGAN: Judge, I have a sentencing at 9:30.

14 Can we push it back?

15 THE COURT: Yeah, we'll push it back some. What

16 time is your sentencing?

17 MR. COLGAN: 9:30, Judge.

18 THE COURT: Then you should be done by 11:00,

19 wouldn't you think?

20 MR. COLGAN: I would think.

21 THE COURT: Let's set it at 11:00. That's on a

22 Monday, anyhow. I can sleep late.

23 MR. COLGAN: Judge, what started us on the issue of

24 the psychological evaluation was the information I imparted

25 to the Court about possible ethical issues that may end up

1  surfacing at trial, and I haven't filed a motion because I
2  just found out --
3       THE COURT:  Mr. Colgan, don't -- what I'm going to
4  do is to appoint the psychiatrist to meet and confer with the
5  defendant to determine, if he possibly can, his competency to
6  understand the nature and consequences of the offense with
7  which he's charged and whether he can cooperate with his
8  counsel.  And that's all I'm interested in.
9       MR. COLGAN:  I understand.
10      THE COURT:  All right?  If there's nothing else,
11 we'll recess.  We don't have anything else today, do we?
12      THE LAW CLERK:  No, Judge.
13      THE COURT:  All right.  We'll recess.  Thank you.
14      (The hearing adjourned at 10:25 a.m.)
15
16                    CERTIFICATION
17
18      I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20
21                    s/s
22              Heidi L. Jeffreys
23
24           September 21, 2010
25                    Date

Heidi L. Jeffreys, Official Court Reporter